JOHNSTON v HARTFORD INSURANCE COMPANY

Docket No. 66226. Submitted August 1, 1983, at Grand Rapids.—
Decided January 3, 1984. Leave to appeal applied for.

Robert Johnston was injured when he slipped while entering the cab of a mobile crane, of which he was the operator. The mobile crane was one which could be driven on the highways from job site to job site. When in use as a crane, the vehicle was hydraulically raised off its wheels and counterweights were added. When rigged as a crane the vehicle could not be driven. The crane was rigged as a crane on a job site at the time Johnston was injured. He brought an action against Hartford Insurance Company and others, seeking to recover the differential then permitted between what he received as workers' compensation benefits and benefits recoverable under his no-fault automobile insurance. The Cheboygan Circuit Court, Robert C. Livo, J., granted summary judgment to plaintiff, holding as a matter of law that the crane was a motor vehicle within the meaning of the no-fault act. The court found that the use of a motor vehicle was not controlling where an object had the characteristics of a motor vehicle, that the accident met the criteria of the parked vehicle provisions of the act, and that there was a causal relationship between the crane and plaintiff's injury. Defendant Hartford appealed. *Held:*

1. The crane met the statutory requirements for a "motor vehicle" and, even when rigged as a crane, remained a motor vehicle because of its convertibility back to a mobile state.

2. The plaintiff was entering the driving cab of the crane when the accident occurred. He thus came within the parked vehicle provision of the statute.

3. The statute requires that an injury arise out of the use of a motor vehicle "as a motor vehicle" in order for an insured to recover benefits. By this requirement, the Legislature intended

[1, 4] 7 Am Jur 2d, Automobile Insurance §§ 229, 230.
What constitutes a "motor vehicle" covered under no-fault insurance. 60 ALR3d 651.

[2] 7 Am Jur 2d, Automobile Insurance §§ 129, 340 *et seq.*

[3] 73 Am Jur 2d, Statutes §§ 204 *et seq.,* 238.

to limit the act's coverage to a motor vehicle whose function at the time of the accident was one compatible with that of a motor vehicle. A dual-function vehicle, such as the crane herein, falls outside the statute when it has been converted solely to its nonlocomotive function as it is not then being used "as a motor vehicle". The crane was not being used as a motor vehicle; therefore, summary judgment for plaintiff was improper. Summary judgment is to be entered in favor of defendant Hartford.

Reversed and remanded.

1. INSURANCE — NO-FAULT INSURANCE — DUAL PURPOSE VEHICLE — MOBILE CRANES.

A mobile crane, designed for operation on the public highways when being driven from job site to job site, is a "motor vehicle" for purposes of the automobile no-fault insurance act; its dual purpose, by itself, is not sufficient to remove it from "motor vehicle" status even when being used as a crane (MCL 500.3105[1]; MSA 24.13105[1]).

2. INSURANCE — NO-FAULT INSURANCE — PARKED VEHICLES.

A claimant, in order to recover no-fault benefits for injuries sustained in connection with a parked vehicle, must establish both that he came within one of the enumerated exceptions to the statutory parked vehicle provision and that the injuries arose out of the ownership, maintenance, or use of the parked vehicle as a motor vehicle (MCL 500.3105[1], 500.3106; MSA 24.13105[1], 24.13106).

3. STATUTES — JUDICIAL CONSTRUCTION.

No phrase, clause, or word of a statute should be ignored in construing the statute, nor should the intent of the Legislature be defeated by a technical or forced interpretation of the statutory language.

4. INSURANCE — NO-FAULT INSURANCE — MOTOR VEHICLES — DUAL PURPOSE VEHICLE — USE OF VEHICLE.

The use of the phrase "as a motor vehicle" in the no-fault insurance act indicates a legislative intent to limit the act's coverage to motor vehicles whose function at the time of an accident was one compatible with that of a motor vehicle; therefore, a dual-function vehicle such as a mobile crane falls outside the statute when it has been converted solely to its nonvehicular function; an injury occurring during such use does not occur during the use of a motor vehicle "as a motor

vehicle" (MCL 500.3101[2][d], 500.3105[1]; MSA 24.13101[2][d], 24.13105[1]).

*Daniel Loznak,* for plaintiff.

*Rhoades, McKee & Boer* (by *Michael W. Betz),* for defendant.

Before: V. J. BRENNAN, P.J., and SHEPHERD and E. A. QUINNELL,* JJ.

SHEPHERD, J. Defendant, plaintiff's no-fault insurer, appeals a July 29, 1982, order granting summary judgment in favor of plaintiff on the question of whether a vehicle on which plaintiff was injured was a motor vehicle.

On appeal, plaintiff and defendant Hartford have stipulated to the following facts.

Robert Johnston was an employee of Detroit Crane on May 4, 1980. His job involved the operation of a mobile crane, a load-lifting device mounted on a truck chassis. The truck chassis had multiple wheels, was powered by an internal combustion engine, and was designed to be operated on the highway while in the "travel mode". Approximately one and one-half weeks before he was injured, Mr. Johnston had driven the crane (while in the "travel mode") from an out-state job site to Detroit. Once the crane arrived on the construction site, it was rigged to perform its function as a crane. It was driven to a convenient location on the job site. The gantry (the supporting framework for the boom) was hydraulically lifted to a point 24 feet above the ground. Outriggers were placed and hydraulically actuated to lift the back wheels of the crane off the ground. Forty-eight tons of counterweights were attached to the back of the crane

* Circuit judge, sitting on the Court of Appeals by assignment.

and six tons of counterweights were attached to the front of the crane, the purpose of which was to lift structural steel and other objects onto the top of the construction project.

The rigging of the crane took three days to complete and, upon completion of the rigging, the crane could not have been driven. The crane had two different cabs, one holding the controls for operation of the lifting devices and the other containing the controls for driving the crane when it was in its driveable mode.

On the day of the accident, with the crane fully rigged, Mr. Johnston had lifted a steel beam onto the top of a building that was under construction. He received a signal from the workmen on top of the building to take a break while they positioned the beam. Leaving the steel beam suspended from the lifting cable, plaintiff got out of the cab used to operate the lifting functions of the crane and was proceeding across the top of the crane to the other cab so he could fill out his time tickets. In the process of climbing up into the "driving" cab to get his time tickets, he put his foot on the step of the cab and slipped, losing his balance. He caught himself before he actually fell to the ground, but in the process ruptured a disc in his back.

On May 8, 1981, Mr. Johnston initiated suit in the Circuit Court for the County of Cheboygan against defendant-appellant Hartford Insurance Company, the no-fault insurer for his own personal-use auto; Aetna Insurance Company, the no-fault fleet insurer for the Detroit Crane Company; Canadian Universal Insurance Company, Inc., the general liability carrier for Detroit Crane Company, and the Secretary of State, Assigned Claims Fund. In that suit, Mr. Johnston sought to recover the differential then permitted by the no-fault

statute between what he had received under workers' compensation and what he could receive under the Michigan no-fault automobile insurance act.

The trial court granted plaintiff-appellee's motion for summary judgment on July 14, 1982. Judgment on the court's verdict (ruling that the crane was a motor vehicle under the no-fault act) was entered on July 29, 1982.

The trial court found, as a matter of law, that the crane was a motor vehicle within the meaning of the no-fault act. The court also held that "use" of a motor vehicle was not a controlling factor where an object had the characteristics of a motor vehicle, and found that the accident met the criteria of the parked vehicle provisions of the no-fault act, MCL 500.3106; MSA 24.13106, and that there was a causal relationship between the crane and plaintiff's injury. The court therefore granted plaintiff's motion for summary judgment under GCR 1963, 117.2(3).

On appeal, defendant contends that the trial court erred in granting summary judgment in favor of plaintiff. We agree.

Under GCR 1963, 117.2(3), the trial judge could grant summary judgment when "there is no genuine issue as to any material fact, and the moving party is therefore entitled to judgment as a matter of law". The facts were stipulated to by both parties and thus the court could grant summary jdugment under GCR 1963, 117.2(3). Summary judgment in favor of Johnston would only be error if the court's rulings on the substantive legal issues were incorrect.

The first such ruling challenged by defendant is the trial court's determination that the stationed crane was a motor vehicle as a matter of law.

Michigan's no-fault act contains the following definitions:

"(2) As used in this chapter: * * *

"(c) 'Motor vehicle' means a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels. Motor vehicle does not include a motorcycle or a moped, as defined in section 32b of Act No. 300 of the Public Acts of 1949.

"(d) 'Motor vehicle accident' means a loss involving the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle regardless of whether the accident also involves the ownership, operation, maintenance, or use of a motorcycle as a motorcycle." MCL 500.3101; MSA 24.13101.

Although there is no Michigan case law dealing with the classification of a crane in this situation, the trial court found that the crane was a motor vehicle under the statutory definition set forth above, relying on *H R Weissberg Corp v New York Underwriters Ins Co,* 260 Md 417; 272 A2d 366 (1971), which held that a crane did not lose its identification as a vehicle when it was immobilized by outriggers. The trial court also relied on another Cheboygan Circuit Court opinion which, in turn, had relied on *Weissberg, supra,* and *Donahue Construction Co v Transport Indemnity Co,* 7 Cal App 3d 291; 86 Cal Rptr 632 (1970).

In *Donahue,* a mobile truck crane was unloading pipe from a truck. A piece of pipe struck a worker. The crane was moved during the unloading process but was stopped at the time of the accident. The outriggers on the crane had not been extended to make the crane immobile. The court was faced with the question of whether an insurance policy on the crane would cover this situation. The court relied on California's Vehicle Code in defining a

vehicle under the insurance policy, regarding the code as applicable to every policy of liability insurance. The court found the crane to be a vehicle and a motor vehicle under the code, which defined a vehicle as "a device by which any person or property may be propelled, moved, or drawn upon a highway, excepting a device moved by human power or used exclusively upon stationary rails or tracks", and a motor vehicle as "a vehicle which is self-propelled". 7 Cal App 3d 300; 86 Cal Rptr 638. The court found that the endorsement to the policy, which imposed liability for the use of motor vehicles and all vehicles operated by the insured, covered the crane. *Donahue,* however, is factually distinguishable from the instant case in that the crane in *Donahue* was not immobile. That crane was a dual-function piece of equipment, but was not restricted to one function, and was actually moved during the unloading process.

In *Weissberg, supra,* a hotel was struck by the boom of a moveable crane engaged in demolition work. The crane was immobilized at the time of the accident. The court, interpreting an extended coverage endorsement to a fire insurance policy covering "a direct loss by * * * vehicles", found the crane to be a vehicle under existing case law but expressly distinguished cases construing automobile liability policies. 260 Md 423; 272 A2d 368-369.

In *Smedley v Milwaukee Automobile Ins Co,* 12 Wis 2d 460; 107 NW2d 625 (1961), the plaintiff sued for negligent operation of an outriggered, immobilized crane and sought to join the crane operator's insurer under Wisconsin statute. The court held that the crane was not a motor vehicle for purposes of the lawsuit, but based its ruling on the use of the crane at the time of the accident.

The court stated that "if the unit were being driven on a public street for the purposes of locomotion, it would be considered a motor vehicle". 12 Wis 2d 466; 107 NW2d 628. (In contrast to *Smedley,* the trial court in the instant case held that the "use" was not a controlling factor once the crane was characterized as a motor vehicle.)

We find that the crane, while moving, met the statutory requirements for a "motor vehicle". It was designed to be operated upon the public highway by other than muscular power and had more than two wheels. The dual purpose of the crane standing by itself is insufficient to remove it from "motor vehicle" status under MCL 500.3105(1); MSA 24.13105(1). The situation here may be analogized to that presented in *Kelly v Inter-City Truck Lines, Inc,* 121 Mich App 208, 210; 328 NW2d 406 (1982), where, in holding that a trailer which was unattached to a truck cab was still a motor vehicle under the no-fault act, this Court stated:

"We can conceive of situations in which the owner of a trailer might show that it is no longer 'designed for operation on a public highway'. * * * The present case is not, however, the close case in which a careful study of the question is warranted."

Here, while the crane could not be driven on the highway at the time the accident occurred, it could have been converted to its mobile state and, in fact, once the job was completed, it would presumably have been altered and driven away. We therefore find that the vehicle, under these facts, remained a motor vehicle for purposes of the no-fault act even when being used as a crane.

It must then be determined whether defendant was liable for plaintiff's injuries under the parked

vehicle provision of the no-fault act, which provides that:

"(1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

\* \* \*

"(c) \* \* \* the injury was sustained by a person while occupying, entering into, or alighting from the vehicle." MCL 500.3106; MSA 24.13106.

Both MCL 500.3106; MSA 24.13106 and MCL 500.3105; MSA 24.13105 must be met in order for liability for injuries connected to a parked vehicle to arise.

"In order to recover no-fault benefits for injuries sustained in connection with a parked vehicle, a claimant must establish both the applicability of one of the § 3106 categories and, in addition, that the injuries arose out of the ownership, operation, maintenance, or use of the parked vehicle. MCL 500.3105(1); MSA 24.13105(1); Kangas v Aetna Casualty & Surety Co, 64 Mich App 1, 17; 235 NW2d 42 (1975), lv den 395 Mich 787 (1975); Shinabarger v Citizens Mutual Ins Co, 90 Mich App 307; 282 NW2d 301 (1979); Dowdy v Motorland Ins Co, 97 Mich App 242; 293 NW2d 782 (1980); Block v Citizens Ins Co of America, 111 Mich App 106; 314 NW2d 536 (1981); Krueger v Lumbermen's Mutual Casualty, 112 Mich App 511; 316 NW2d 474 (1982)." King v Aetna Casualty & Surety Co, 118 Mich App 648, 651; 325 NW2d 528 (1982).

In Kangas v Aetna Casualty & Surety Co, 64 Mich App 1, 13, 17; 235 NW2d 42 (1975), this Court defined "arising out of" under MCL 500.3105; MSA 24.13105:

" 'The words "arising out of" have been viewed as

words of much broader significance than "caused by", and have been said to mean "originating from", "having its origin in", "growing out of" or "flowing from", or in short, "incident to" or "having connection with" the use of the car. *Schmidt v Utilities Ins Co,* 353 Mo 213; 182 SW2d 181 (1944); *National Indemnity Co v Corbo,* 248 So 2d 238 (Fla App, 1971).' * * * In summary, we conclude that while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle."

Thus, the accident in the instant case must meet MCL 500.3106; MSA 24.13106 and MCL 500.3105(1); MSA 24.13105(1) criteria for insurer liability. The trial court held that both MCL 500.3106(c); MSA 24.13106(c) (person occupying a parked vehicle) and the causal connection between the accident and crane were satisfied. If the trial court incorrectly decided one of these issues, the order for summary judgment should be reversed. (See 15 ALR4th 10, annotating *Shinabarger v Citizens Mutual Ins Co, supra,* dealing with accidents "arising out of the use" of insured vehicles.)

Since we have determined that the crane was a motor vehicle, and it was clear that plaintiff was climbing from the "driving cab" of the vehicle when he fell, the requirement of the parked-vehicle statute, MCL 500.3106(c); MSA 24.13106(c) was satisfied.

The final and critical question becomes, then, whether plaintiff's accident arose out of the use of a vehicle as a motor vehicle. Although the crane meets the statutory requirements to be a motor vehicle and satisfies the parked vehicle require-

ments, plaintiff's no-fault insurer will not be liable for plaintiff's injuries unless the crane was being used as a motor vehicle at the time of the accident.

The trial court found that the accident arose out of the use of a motor vehicle since there was a sufficient causal connection between the accident and the crane. On the undisputed facts, the trial court correctly found that there was a causal connection between the use of the crane and the injury. The trial court, however, failed to address the question of whether the crane was being used as a motor vehicle at the time the accident occurred, a necessary finding in order to assess liability.

The motor vehicle accident definition and the statute imposing liability both require that the use of a motor vehicle be *as a motor vehicle.*

" 'Motor vehicle accident' means a loss involving the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle regardless of whether the accident also involves the ownership, operation, maintenance, or use of a motorcycle as a motorcycle." MCL 500.3101(2)(d); MSA 24.13101(2)(d).

"Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3105(1); MSA 24.13105(1).

If the statutes merely required "use of a motor vehicle", then once the crane was found to be a motor vehicle, a causal connection between the crane and the injury would satisfy the statutory requirement. However, the additional words in the statute, "use of a motor vehicle as a motor vehicle" show that the Legislature intended to impose

an additional requirement. No phrase, clause, or word of a statute should be ignored in construing it; effect must be given to every part. *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956). The statutory language requires that the function of the motor vehicle at the time of use be considered.

A too technical approach, *i.e.,* one dictating that, once a dual-purpose vehicle has been ruled a motor vehicle, it is a motor vehicle at all times and for all purposes, would destroy the intent of the statute and create undesirable results. A common sense approach, however, dictates that the intention of the Legislature was to limit the act's coverage here to motor vehicles whose function at the time of the accident was one compatible with that of a motor vehicle. The intent of the Legislature should not be defeated by a technical or forced interpretation of the statutory language. *Grand Rapids Motor Coach Co v Public Service Comm,* 323 Mich 624, 635; 36 NW2d 299 (1949).

Under this analysis, once a dual-function unit has been converted to a sole nonlocomotive function, it should fall outside the liability statute. Plaintiff's argument that refusal to treat the crane as a motor vehicle would be inconsistent with the parked vehicle statute is not persuasive. A dual-function unit which has not been converted, *e.g.,* one which is merely parked or stopped while functioning under its motor vehicle design, would still be a parked vehicle under MCL 500.3106; MSA 24.13106. Thus, interpreting the "as a motor vehicle" language to relate to the function of a vehicle at the time of an accident should impose liability with respect to a dual-function unit only when in use in its locomotive function. Converted solely to its other function, the unit would fall outside the

statute. A dual unit operating as both would fall within the motor vehicle liability provision.

Wisconsin courts, in *Smedley, supra,* and later cases, have denied motor vehicle status to immobilized cranes. Although these courts denied such status by finding that the cranes could not be defined as motor vehicles or vehicles, their analysis concentrated on the use of the cranes and, although slightly out of context, is persuasive.

"The test under the statutes is whether at the time of the accident the unit is being used, managed, controlled or operated as a motor vehicle in the ordinary meaning of those words. At the time of the accident the unit was stationary, the crane was stabilized, supported, and rendered immobile by outriggers. The unit was not then used as a motor vehicle. Plaintiff was injured by the operation of the crane, not the operation of the truck. We do not believe such use of the unit is within the meaning of the negligent operation, management or control of a motor vehicle as used in sec. 260.11, Stats." *Smedley,* 12 Wis 2d 467; 107 NW2d 628 (1961).

See, also, *Neumann v Wisconsin Natural Gas Co,* 27 Wis 2d 410; 134 NW2d 474 (1965); *Schmidt v Luchterhand,* 62 Wis 2d 125; 214 NW2d 393 (1974).

We conclude, therefore, that the language of the no-fault act requires not only that a vehicle be a motor vehicle but, in order to establish liability, it must also be used as a motor vehicle at the time of the accident. If the Legislature had intended coverage for any accident involving a motor vehicle, the additional requirement that the accident arise out of the use of a motor vehicle as a motor vehicle would be unnecessary surplusage. Since mere use of the vehicle, without discrimination as to the nature of that use, is not enough, we hold that the trial court erred in finding that plaintiff's accident satisfied the requirement of MCL 500.3105(1); MSA

24.13105(1). Summary judgment in favor of plaintiff-appellee should not have been granted. The motion for summary judgment filed by defendant-appellant should have been granted and the matter is reversed and remanded for entry of an order denying the motion for summary judgment filed by plaintiff-appellee and granting the motion for summary judgment filed by defendant-appellant.

Costs to defendant-appellant.