BIALOCHOWSKI v CROSS CONCRETE PUMPING COMPANY

Docket No. 76180. Argued October 8, 1986 (Calendar No. 14). Decided June 1, 1987.

John A. Bialochowski brought an action in tort in the Wayne Circuit Court against Cross Concrete Pumping Company for injuries suffered in the course of his employment as a result of an accident at a construction site involving a cement truck. Following settlement, Reliance Insurance Company, his employer's workers' compensation carrier, sought reimbursement from the settlement proceeds of medical and wage loss benefits paid to Bialochowski. Bialochowski brought a second action, seeking a declaration that Reliance was not entitled to reimbursement of workers' compensation disability benefits from the tort recovery. The court, Lucile A. Watts, J., granted summary judgment for the plaintiff. The Court of Appeals, HOOD, P.J., and M. J. KELLY and LIVO, JJ., affirmed, holding that Reliance was not entitled to reimbursement for benefits which substitute for no-fault benefits, but that it was entitled to a lien as to benefits paid which exceeded no-fault benefits in duration or amount (Docket No. 74243). Reliance appeals.

In an opinion by Justice CAVANAGH, joined by Chief Justice RILEY and Justices LEVIN, BOYLE, and ARCHER, the Supreme Court *held:*

Because the plaintiff was injured in a motor vehicle being used as a motor vehicle, and therefore entitled to no-fault benefits, the defendant's payment of workers' compensation benefits substituted for no-fault benefits otherwise payable. Thus, the defendant is not entitled to reimbursement under the workers' compensation act, but, rather, is limited to reimbursement permitted a no-fault carrier under the no-fault act. To the extent the defendant's payment of workers' compensation bene-

REFERENCES

Am Jur 2d, Automobile Insurance §§ 127-129, 348, 357, 368, 443.

Am Jur 2d, Worker's Compensation §§ 426, 429 *et seq.*

Validity and construction of liability policy provision requiring insured to reimburse insurer for payments made under policy. 29 ALR3d 291.

See also the annotations in the Index to Annotations under Subrogation; Worker's Compensation.

fits exceeded no-fault benefits to which the plaintiff was entitled, the defendant is entitled to a lien against the settlement proceeds for reimbursement of the excess.

1. An employee, injured in the course of employment in an accident involving a motor vehicle used as a motor vehicle is subject to the workers' compensation act and the no-fault act with regard to entitlement to compensation. Where a workers' compensation carrier pays benefits which substitute for no-fault benefits otherwise payable, it is not entitled to reimbursement under the workers' compensation act, but is limited to reimbursement permitted a no-fault insurer under the no-fault act. Where an injured employee recovers from a third party for noneconomic loss and excess economic loss, the recovery may not be reduced by personal injury protection benefits paid under the no-fault act. Thus, payment of disability benefits by a workers' compensation carrier which substitute for no-fault benefits may not reduce a recovery in tort from a third party.

2. In this case, the vehicle in question was a cement truck capable of, and intended to be used in, the pouring of cement at elevated levels. The plaintiff was injured while the vehicle was being used for this intended purpose. The plaintiff, thus, was entitled to personal injury protection benefits under the no-fault act. The defendant's payment of workers' disability benefits substituted for the no-fault benefits otherwise payable, and thus it is limited to reimbursement permitted a no-fault carrier under the no-fault act. However, to the extent the defendant's payment of workers' disability benefits exceeds in duration or amount the no-fault benefits otherwise payable, they do not substitute for the no-fault benefits to which the plaintiff is entitled, and thus the defendant is entitled to a lien against the plaintiff's recovery from the third-party tortfeasor for reimbursement of the excess.

3. Determination of whether the defendant's payment of workers' compensation exceeded no-fault benefits otherwise payable is a question of fact. Thus, the grant of summary judgment as to that issue was error, requiring remand to the trial court for such a determination.

Justice BRICKLEY, joined by Justice BOYLE, concurring, stated that in cases in which an injured employee neither claims nor receives no-fault benefits prior to settlement, and third-party tort pleadings do not indicate a no-fault theory of liability, the possibility of double recovery exists if no reimbursement is made to the workers' compensation carrier. Under the Workers' Disability Compensation Act recovery in tort is for all damages, economic and noneconomic. Thus, an injured employee who receives workers' compensation benefits and recov-

ers in tort from a third party must reimburse the workers' compensation carrier because the tort recovery basically duplicates the elements of damage already compensated. Under the no-fault act, recovery in tort from third parties is generally limited to loss falling outside no-fault coverage, i.e., noneconomic and excess economic loss. Thus, reimbursement is not required because there is no duplication of compensation.

In this case, because the plaintiff applied for no-fault benefits a year prior to settlement with the subcontractor, and the subcontractor raised the defense of no-fault residual tort liability, it is assumed that the settlement was for noneconomic and excess economic damages only.

Affirmed in part and reversed in part.

Justice GRIFFIN took no part in the decision of this case.

141 Mich App 315; 367 NW2d 381 (1985) affirmed in part and reversed in part.

1. WORKERS' COMPENSATION — NO-FAULT — REIMBURSEMENT.

Workers' compensation benefits which substitute for no-fault benefits otherwise payable to a person injured in a motor vehicle accident in the course of employment do not entitle the workers' compensation carrier to reimbursement under the workers' compensation act; rather, the carrier is limited to reimbursement permitted a no-fault carrier under the no-fault act (MCL 418.827[5], 500.3116; MSA 17.237[827][5], 24.13116).

2. WORKERS' COMPENSATION — NO-FAULT — THIRD-PARTY TORTFEASORS — REIMBURSEMENT.

Workers' compensation benefits which exceed in duration or amount no-fault benefits otherwise payable to a person injured in a motor vehicle accident in the course of employment do not substitute for the no-fault benefits, entitling the workers' compensation carrier to a lien against a worker's recovery from a third-party tortfeasor for reimbursement of the excess (MCL 418.827[5], 500.3116; MSA 17.237[827][5], 24.13116).

3. INSURANCE — NO-FAULT — USE OF MOTOR VEHICLES.

The phrase "use of a motor vehicle as a motor vehicle" in the no-fault act includes the use of a cement truck capable of pouring cement at elevated levels to pump cement (MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.*).

*Samuel I. Bernstein* for the plaintiff.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Michael L. Updike*) for the defendant.

CAVANAGH, J. The primary issue presented by this case is whether Reliance Insurance Company is entitled to reimbursement from plaintiff's third-party tort recovery for workers' compensation disability benefits paid to plaintiff. The resolution of this issue depends upon whether Reliance's payment of workers' disability benefits substituted for the payment of no-fault benefits. If Reliance's payment of workers' disability benefits substituted for no-fault benefits, then, pursuant to this Court's decision in *Great American Ins Co v Queen,* 410 Mich 73; 300 NW2d 895 (1980), Reliance is not entitled to reimbursement under the Workers' Disability Compensation Act[1] from plaintiff's tort recovery from the third-party tortfeasor, defendant Cross Concrete Pumping Company. We hold that Reliance's payment of workers' disability benefits substituted for no-fault benefits that were otherwise payable, and, therefore, Reliance's reimbursement is limited to the reimbursement that a no-fault carrier is entitled to under the no-fault act. MCL 500.3116; MSA 24.13116.

I. FACTS

John Bialochowski was rendered a paraplegic as a result of a June 13, 1980 accident that occurred on a construction site at a General Motors Assembly Division facility. Plaintiff's employer, the Emanuel Company, was hired by General Motors for the construction project. Construction of the facility involved the pouring of cement at elevated levels. Emanuel contracted the services of Cross Concrete Pumping Company for the pouring of the cement. Cross Concrete brought onto the job site a motorized, four-wheel, cement truck. Permanently attached to this truck was a concrete pump and a

---

[1] MCL 418.827(5); MSA 17.237(827)(5).

thirty- to thirty-five-foot boom, which was used to pump concrete up to the elevated levels. Plaintiff was injured in the course of his employment when the concrete pump exploded, causing the boom to collapse upon plaintiff, crushing him. At the time of the accident, the truck was parked and stabilized.

Reliance, Emanuel Company's workers' compensation carrier, paid $150,562.42 in workers' disability benefits to plaintiff. Subsequently, plaintiff brought a tort action against Cross Concrete, which was settled for $750,000. Upon learning of plaintiff's third-party tort recovery, Reliance requested reimbursement for its medical and wage loss workers' disability payments pursuant to its statutory right of reimbursement under the WDCA. MCL 418.827(5); MSA 17.237(827)(5).

Plaintiff then filed this action, seeking a declaration that Reliance was not entitled to any portion of the settlement proceeds. Plaintiff moved for summary judgment, claiming that the settlement did not include recovery for damages paid by Reliance. Relying on this Court's decision in *Queen, supra,* the trial court granted summary judgment for the plaintiff. Reliance appealed in the Court of Appeals, claiming that *Queen* was inapplicable because the accident in which plaintiff was injured did not involve a motor vehicle and did not require payment of no-fault benefits. The Court of Appeals disagreed and affirmed the trial court's grant of summary judgment. The Court of Appeals also held that Reliance was entitled to a lien as to benefits paid which exceeded no-fault benefits in duration or amount. 141 Mich App 315, 321; 367 NW2d 381 (1985).

II

In *Queen,* Justice LEVIN, writing for a majority

of this Court, succinctly set forth an employee's entitlement to compensation for injuries when an employee is injured in the course of his employment in an accident involving a motor vehicle:

> When an employee is injured in a motor vehicle accident in the course of his employment, his entitlement to compensation for his injuries, from all sources, is governed by the workers' compensation act and the no-fault act. His rights and entitlements under each act are affected by his being injured under circumstances which make him subject to the provisions of the other.
>
> Under the workers' compensation act the employee is entitled to statutory compensation and may also seek to enforce the legal liability of a third party. But, by operation of the no-fault act, that legal liability is limited.
>
> Under the no-fault act he is entitled to no-fault benefits. But, once the liability of the no-fault insurer is determined, that liability is reduced by the amount of workers' compensation benefits paid or payable because of the injury.[2]

In *Queen, supra,* Queen was injured in a motor vehicle accident during the course of his employment. He received workers' disability benefits and claimed benefits from his employer's no-fault insurer (the employer furnished the motor vehicle involved in the accident). The no-fault insurer subtracted the amount paid by the workers' compensation carrier from the benefits it otherwise owed under the no-fault act. Queen then brought suit, pursuant to § 3135 of the no-fault act, MCL 500.3135; MSA 24.13135, against a third-party tortfeasor, alleging that the third party's negligence caused the motor vehicle accident.

After Queen's claim against the third-party tortfeasor was settled, the workers' compensation car-

---

2 *Queen,* 410 Mich 86.

rier brought suit against Queen and the third-party tortfeasor, claiming a lien on the settlement for reimbursement of workers' disability benefits paid pursuant to § 827 of the Workers' Disability Compensation Act. The trial court granted summary judgment to Queen, and the Court of Appeals affirmed.

We held that when a workers' compensation carrier's payment of benefits substituted for no-fault benefits otherwise payable,[3] the workers' compensation carrier is not entitled to reimbursement under the WDCA, but, rather, is limited to the reimbursement permitted a no-fault insurer under the no-fault act.[4] We so held because of our determination that the Legislature intended that employees injured in motor vehicle accidents are entitled to the same compensation and have the same limited right to tort recovery as other motor vehicle accident victims.[5] Since the Legislature, in the no-fault act, has expressed their judgment that tort recovery under § 3135 for noneconomic loss and excess economic loss shall not be reduced by personal injury protection benefits paid, a workers' compensation carrier's payment of workers' disability benefits which substitute for no-fault benefits should not reduce the third-party tort recovery of an injured employee.[6]

III

Reliance's payment of workers' disability bene-

---

[3] A workers' compensation carrier's payment of benefits substitutes for no-fault benefits because of the no-fault act's mandatory setoff provision, MCL 500.3109; MSA 24.13109, which permits a no-fault insurer to deduct from its payment of no-fault benefits any benefits paid under the workers' compensation act. See *Mathis v Interstate Motor Freight System*, 408 Mich 164; 289 NW2d 708 (1980).

[4] *Queen*, 410 Mich 95-96.

[5] *Queen*, 410 Mich 94-95.

[6] *Queen*, 410 Mich 95-96.

fits will have substituted for no-fault benefits if
plaintiff is entitled to personal injury protection
benefits under the no-fault act.

A

The first question is whether the truck which
caused plaintiff's injuries was a motor vehicle
under the no-fault act. The act defines a motor
vehicle as "a vehicle, including a trailer, operated
or designed for operation upon a public highway
by power other than muscular power which has
more than 2 wheels." MCL 500.3101(2)(c); MSA
24.13101(2)(c). There is no question that the equip-
ment truck here involved meets this definition as
it is designed for operation upon a public highway
by power other than muscular power and has four
wheels.

B

The more important issue is whether the no-
fault carrier for the truck would be liable for
personal injury protection benefits. Section 3105 of
the no-fault act provides that a no-fault insurer "is
liable to pay benefits for accidental bodily injury
arising out of the ownership, operation, mainte-
nance or use of a motor vehicle as a motor
vehicle . . . ." MCL 500.3105(1); MSA 24.13105(1).
Reliance, citing *Johnston v Hartford Ins Co,* 131
Mich App 349; 346 NW2d 549 (1984), argues that
the equipment truck was not being used as a
motor vehicle, but rather, was being used as a
piece of construction machinery, a cement pump
which poured concrete at elevated levels.

In *Johnston,* a crane operator was injured when
he slipped after getting out of the cab of the crane
that contained the controls used to operate the

lifting mechanism of the crane, and while entering the cab that contained the controls for driving the crane. The crane was immobilized by outriggers, retraction of its wheels, and the placement of fifty-four tons of counterweights. It took three days to rig the crane, which then could not be driven. The crane was used to lift structural steel and other objects to the upper levels of the construction project.[7]

The crane operator in *Johnston* brought suit against his personal no-fault insurer under §§ 3105 and 3106 of the no-fault act.[8] The Court of Appeals held that plaintiff was not entitled to no-fault benefits because the crane was a dual-purpose vehicle which was not being used as a motor vehicle at the time of the accident.[9] In so holding, the Court of Appeals stated:

> A too technical approach, i.e., one dictating that, once a dual-purpose vehicle has been ruled a motor vehicle, it is a motor vehicle at all times and for all purposes, would destroy the intent of the statute and create undesirable results. A common sense approach, however, dictates that the intention of the Legislature was to limit the act's coverage here to motor vehicles whose function at the time of the accident was one compatible with that of a motor vehicle. The intent of the Legislature should not be defeated by a technical or forced interpretation of the statutory language.[10]

Defendant's reliance on *Johnston* is misplaced for several reasons. First, the truck in the present case is dissimilar to the crane in that it did not require three days and the attachment of counter-

---

[7] *Johnston,* 131 Mich App 351-352.

[8] MCL 500.3105; MSA 24.13105 and MCL 500.3106; MSA 24.13106.

[9] *Johnston,* 131 Mich App 360-361.

[10] *Johnston,* 131 Mich App 360.

weights and outriggers to immobilize it. Rather, although this truck was parked and stabilized, the stabilizers could have been disengaged, the truck started, and then driven away.

Second, and more importantly, we believe that the Court of Appeals in *Johnston* interpreted the statutory phrase "use of a motor vehicle as a motor vehicle" contained in § 3105 too narrowly. The no-fault act is remedial in nature, as evidenced by the fact that the act "was offered as an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or 'fault') liability system."[11] The no-fault act was designed "to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses."[12] In exchange for a more certain recovery under the no-fault act, an injured person's right to recover damages from a negligent owner or operator of a motor vehicle in a tort action is limited.[13] This remedial nature of the no-fault act would be advanced by broadly construing its provisions to effectuate coverage.

Applying a broad remedial interpretation to the phrase "use of a motor vehicle as a motor vehicle," it becomes clear that it is not limited to normal vehicular movement on a highway. Motor vehicles are designed and used for many different purposes. The truck involved in this case is a cement truck capable of pouring cement at elevated levels. Certainly one of the intended uses of this motor vehicle (a motor vehicle under the no-fault act) is to pump cement. The accident occurred while this vehicle was being used for its intended purpose.

[11] *Shavers v Attorney General*, 402 Mich 554, 578; 267 NW2d 72 (1978), cert den sub nom *Allstate Ins Co v Kelley*, 442 US 934 (1979).

[12] *Shavers*, 402 Mich 578-579.

[13] See MCL 500.3135; MSA 24.13135.

We hold that the phrase "use of a motor vehicle as a motor vehicle" includes this use.

Having concluded that the equipment truck was a motor vehicle being used as a motor vehicle, our inquiry is not complete. In order to receive no-fault benefits for an injury involving a parked vehicle, one of the criteria established in § 3106 of the no-fault act must be met. Section 3106 provides:

> (1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:
>
> (a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.
>
> (b) Except as provided in subsection (2), the injury was a direct result of physical contact with the equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or lowered from the vehicle in the loading or unloading process.
>
> (c) Except as provided in subsection (2), for an injury sustained in the course of employment while loading, unloading, or doing mechanical work on a vehicle, the injury was sustained by a person while occupying, entering into, or alighting from the vehicle. [MCL 500.3106(1)(a)-(c); MSA 24.13106(1)(a)-(c).]

As plaintiff's injury occurred as a result of contact with the boom, which was permanently mounted on the equipment truck, while the pump and boom were being operated or used to pump concrete, subsection (b) applies and plaintiff's accidental bodily injury arose out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless subsection (2) is applicable.

Subsection (2) provides:

> Accidental bodily injury does not arise out of the
> ownership, operation, maintenance, or use of a
> parked vehicle as a motor vehicle if benefits under
> the worker's disability compensation act of 1969,
> Act No. 317 of the Public Acts of 1969, as
> amended, being sections 418.101 to 418.941 of the
> Michigan Compiled Laws, are available to an em-
> ployee who sustains the injury in the course of his
> or her employment while loading, unloading, or
> doing mechanical work on a vehicle unless the
> injury arose from the use or operation of another
> vehicle. [MCL 500.3106(2); MSA 24.13106(2).]

Subsection (2) is not applicable in this case
because plaintiff was not loading, unloading, or
doing maintenance work on the truck. Reliance
admitted, in oral argument, that plaintiff was not
involved "in any way" with the pouring of the
cement. Since plaintiff was not loading, unloading,
or doing mechanical work on the truck, subsection
3106(2) does not operate to exclude plaintiff from
no-fault benefits.

IV

As plaintiff was injured in a motor vehicle acci-
dent for which he was entitled to no-fault benefits,
Reliance's payment of workers' disability benefits
substituted for no-fault benefits that were other-
wise payable. Pursuant to our decision in *Queen,
supra,* Reliance is therefore not entitled to reim-
bursement under the wdca, but rather is limited
to any reimbursement permitted a no-fault carrier
under the no-fault act.[14]

---

[14] A no-fault carrier's right to reimbursement from an injured
person's third-party tort recovery is governed by MCL 500.3116; MSA
24.13116 and our decision in *Workman v DAIIE,* 404 Mich 477; 274
NW2d 373 (1979). In *Workman, supra,* 510, we held that a no-fault

However, to the extent that Reliance's payment of workers' disability benefits exceeded the no-fault benefits to which plaintiff is entitled, Reliance is entitled to a lien against plaintiff's recovery from Cross Concrete for reimbursement of the excess. Workers' disability benefits which exceed in duration or amount no-fault benefits that are otherwise payable do not substitute for no-fault benefits and payment of excess disability benefits should be treated like other workers' disability benefits, entitling Reliance to reimbursement. *Queen,* 410 Mich 97.

The determination of whether Reliance's payment of workers' disability benefits exceeded no-fault benefits otherwise payable involves a factual question. Therefore, the trial court's grant of summary judgment as to this issue only was improper. We remand to the trial court for a determination of whether Reliance's payment of workers' disability benefits exceeded, either in duration or amount, the no-fault benefits due plaintiff. In all other respects the trial court's grant of summary judgment on behalf of plaintiff is affirmed.

RILEY, C.J., and LEVIN, BOYLE, and ARCHER, JJ., concurred with CAVANAGH, J.

BRICKLEY, J. (*concurring*). I concur in the judgment of the Court. While I agree with the application of *Great American Ins Co v Queen,* 410 Mich

carrier is entitled to reimbursement "only if, and to the extent that, the tort recovery includes damages for losses for which personal injury protection benefits were paid." Since personal injury protection benefits do not compensate for noneconomic loss, and since an injured person's recovery from a third-party tortfeasor is limited by § 3135 of the no-fault act to noneconomic and certain excess economic losses not compensated by personal injury protection benefits, a no-fault carrier will generally not be entitled to any reimbursement from a third-party tort recovery as the third-party tort recovery will not include economic, personal injury protection type damages. See *Queen,* 410 Mich 93-94.

73; 300 NW2d 895 (1980), to the facts of this case, I write separately to indicate my view of the limitations of the *Queen* doctrine.

Mr. Bialochowski was injured on June 13, 1980. He applied for no-fault benefits a month later. On August 13, 1981, he settled with Cross Concrete, the third-party tortfeasor, for $750,000. In August of 1982, he received approximately $11,000 in past-due no-fault benefits. Since the record does not indicate otherwise, I would assume that Cross Concrete had notice of Mr. Bialochowski's claim for no-fault benefits and that they settled for noneconomic and excess economic damages only. Thus, Mr. Bialochowski presumably did not receive a double recovery in retaining both his settlement with Cross Concrete and his workers' compensation benefits.

But, in cases in which an injured employee neither claims nor receives no-fault benefits prior to settlement, and third-party tort pleadings do not indicate a no-fault theory of liability, the possibility of double recovery exists if no reimbursement is made to the workers' compensation carrier. Extending *Queen* to such cases is contrary to the Legislature's intent to prevent duplicate recovery.

The problem arises because the Workers' Disability Compensation Act and the no-fault act differ in their provisions for third-party tort recovery.

> [T]he tort recovery under the Workers' Disability Compensation Act is for all damages, economic and noneconomic, MCL 418.827; MSA 17.237(827), whereas a § 3135 recovery [no-fault third-party tort recovery] is only for "noneconomic loss" which by definition excludes all benefits payable under no-fault. [*Workman v DAIIE,* 404 Mich 477, 511; 274 NW2d 373 (1979).]

Thus, under the WDCA, an injured employee must reimburse the workers' compensation carrier because the third-party tort recovery basically duplicates the elements of damage already compensated by the WDCA.

> Section 827(5) of the WDCA . . . permits the injured party to recover "any amount" from the third party, including amounts that would duplicate workers' compensation benefits. "[T]ort recovery under the Workers' Disability Compensation Act is for all damages, economic and noneconomic . . . ." *Workman* . . . . This duplication is eliminated, however, by the statutory requirement for reimbursement of the payer of workers' compensation benefits out of the recovery obtained from the third-party tortfeasor. [*Great American Ins Co v Queen, supra,* 101 (opinion by RYAN, J., concurring in the result).]

The no-fault act, however, allows recovery in tort only for noneconomic and *excess* economic loss, which the act itself does not compensate.[1]

> Under the no-fault act, recovery from third par-

---

[1] (1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

(2) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101(3) and (4) was in effect is abolished except as to:

* * *

(b) Damages for noneconomic loss as provided and limited in subsection (1).

(c) Damages for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 in excess of the daily, monthly, and 3-year limitations contained in those sections. The party liable for damages is entitled to an exemption reducing his or her liability by the amount of taxes that would

ties based upon tort is limited to those injuries that fall outside the coverage of no-fault benefits: noneconomic loss and economic loss exceeding no-fault benefits. Thus, there is no duplication of compensation and, therefore, no need to reimburse the no-fault insurance carrier. [*Id.*, 102.]

Had Mr. Bialochowski failed to apply for no-fault benefits prior to settlement and failed to limit his third-party suit to no-fault residual tort recovery, Cross Concrete would no doubt have assumed that the case did not involve a no-fault theory of liability. Thus, in settling, Cross would have factored both noneconomic and economic losses into its settlement offer because an injured employee may sue for both under the WDCA. Under those circumstances, without a reimbursement to Reliance, Mr. Bialochowski would have recovered twice for his below threshold economic loss—once from Reliance, in the form of WDCA benefits, and again from Cross Concrete, in the form of a third-party tort settlement.

In this case, even though he did not limit his third-party action to no-fault residual tort liability, Mr. Bialochowski applied for no-fault benefits a full year prior to settlement with Cross Concrete and did eventually receive no-fault benefits. Also, Cross Concrete raised a defense of no-fault residual tort liability.[2] The assumption then is that Cross Concrete settled only for noneconomic and excess economic damages. Thus, I concur in the judgment of the Court.

_____

have been payable on account of income the injured person would have received if he or she had not been injured. [MCL 500.3135; MSA 24.13135.]

[2] See the brief of the plaintiff-appellee, pp 18-19.

BOYLE, J., concurred with BRICKLEY, J.

GRIFFIN, J., took no part in the decision of this case.