*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PATTY PARKER,

        Plaintiff,

and

CHANCELLOR PARKER,

        Plaintiff-Appellant,

v

CANAL INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
January 11, 2024

No. 364726
Calhoun Circuit Court
LC No. 2021-001211-CZ

Before: BOONSTRA, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, Chancellor Parker,[1] appeals as of right the trial court's order granting partial summary disposition to defendant, Canal Insurance Company, and denying plaintiff's cross-motion for summary disposition. Plaintiff initiated this action to recover damages for personal property lost in a fire that allegedly started in a vehicle insured by defendant. Plaintiff had parked the at-issue vehicle in a barn and left it there for over 24 hours before the fire started. Defendant argued that it was entitled to summary disposition on plaintiff's claim because plaintiff was the "operator" of the vehicle that caught fire, thus barring him from recovery pursuant to MCL 500.3123(1)(b). The trial court agreed. On appeal, plaintiff argues that the trial court erred by concluding that he was the "operator" of the parked vehicle as a matter of law. We agree, and accordingly reverse and remand for further proceedings consistent with this opinion.

---

[1] In the trial court, plaintiff Patty Parker stipulated to dismiss her claims against defendant with prejudice. She has not appealed that ruling, and has not otherwise participated in this appeal. Therefore, use of the term "plaintiff" in this opinion refers to Chancellor Parker only.

I. BACKGROUND

Plaintiff was an independent contractor for LCJ Trucking—a company owned by plaintiff's father, Jeffrey Parker. For his work, plaintiff drove a Peterbilt tractor (or truck) owned by LCJ Trucking. Defendant insured the truck through a Michigan no-fault policy. Plaintiff had his own no-fault policy for his personal vehicle.

On May 8, 2020, plaintiff picked up a load of steel coils with the Peterbilt tractor. The load was not scheduled for delivery until May 10, 2020, so plaintiff drove the truck with the loaded trailer to a barn owned by plaintiff's aunt, Patty Parker. Jeffrey frequently used Patty's barn for his business, so much so that Patty referred to the barn as "Jeff's shop."[2] Plaintiff planned to leave the Peterbilt tractor in the barn until the scheduled delivery two days later, so he drove the tractor and trailer into the barn, parked it, turned off the engine, and left the tractor-trailer there. Plaintiff then drove his personal vehicle to his home about 10 miles away.

By all accounts, the Peterbilt tractor remained unoccupied and unused in the ensuing days. Then, early on May 10, a fire started in the barn, destroying the barn and its contents. Plaintiff claims that he lost over $990,000 of personal property in the fire. The Marshall Township Fire Department extinguished the fire but never determined the fire's cause or origin.

Plaintiff, believing that the fire started in the Peterbilt tractor insured by defendant, initiated these proceedings. Plaintiff's complaint alleged that he was entitled to damages under MCL 500.3121(1) for the personal property that he lost in the fire.

Defendant eventually moved for summary disposition on plaintiff's claim, arguing that MCL 500.3123(1)(b) barred plaintiff's recovery because (1) plaintiff was a named insured in the no-fault policy that covered his personal vehicle and (2) plaintiff was the "operator" of the Peterbilt tractor that allegedly caught fire. Defendant believed that, because plaintiff was the person who parked the tractor, and because parking is closely related to the transportation function of a motor vehicle, plaintiff must be considered the "operator" of the tractor for purposes of MCL 500.3123(1)(b).[3]

In response, plaintiff contended that, under any definition of "operator," he was not the "operator" of the Peterbilt tractor when the fire started. Because "operator" was undefined in the statute, plaintiff first looked to dictionaries for the term's definition. Plaintiff observed that a variety of dictionaries defined "operator" in the present tense—one who "operates" something. Plaintiff accordingly argued that he was not the "operator" of the tractor when the fire started

---

[2] Although Patty had homeowner's insurance and Jeffrey primarily used the barn, neither Patty nor Jeffrey insured the barn.

[3] As part of its motion, defendant took "no position concerning the origin and cause of the fire." As explained by defendant on appeal, in this motion, defendant "posited that *if* the fire arose from the ownership, operation, maintenance or use of the subject Peterbilt tractor as a motor vehicle as alleged in the Complaint, then [plaintiff] could not recover [property protection insurance] benefits because he was the operator whose operation of the truck is that from which the fire arose."

-2-

because he was not "operating" the Peterbilt tractor at that time; the tractor was parked in a barn with its engine off when the fire started. Plaintiff alternatively argued that the trial court could reference the definition of "operator" in the Michigan Vehicle Code, MCL 257.1 *et seq*. That statute, according to plaintiff, defines "operator" as one who operates a vehicle "upon a highway," and plaintiff observed that the Peterbilt tractor was clearly not "upon a highway" when the fire started. Plaintiff summarized that "[u]nder every conceivable definition or authority, [he] was not the 'operator' of the truck." Plaintiff requested that the trial court deny defendant's motion and grant partial summary disposition to plaintiff on the issue.

At a hearing on the parties' competing motions, the trial court delivered the following ruling from the bench:

> The vehicle was driven by the person we're discussing here today and parked in the barn for delivery. It [sic: he] obtained the materials and was going to park it there and deliver it on at a subsequent date. And in the meantime this fire started and we're here today because of the fire.
>
> So when you look at the term operator it's very clear to me who the operator of this vehicle was. He's the person that put it there and the person that was going to go back and take it again. The appellate courts have looked at this transportation definition, which I agree with. I understand there's some argument from the other side but—but that shouldn't apply. But it's very clear to me that he is the definition and meets the definition of operator in this particular statute, and therefore the motion is granted for partial summary disposition and you may prepare that order.

Plaintiff now appeals.

## II. STANDARD OF REVIEW

A trial court's ruling on a party's motion for summary disposition is reviewed de novo. *Dye v Esurance Prop & Cas Ins Co*, 504 Mich 167, 179; 934 NW2d 674 (2019). Defendant moved for summary disposition under MCR 2.116(C)(10). Summary disposition pursuant to that rule is proper when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The crux of this appeal turns on the proper interpretation of "operator" in MCL 500.3123(1)(b). This raises a question of statutory interpretation, which is reviewed de novo. *Dye*, 504 Mich at 180.

## III. ANALYSIS

The material facts are not in dispute in this appeal. The parties agree that plaintiff drove the Peterbilt tractor on May 8, 2020, into Patty's barn, parked it, and left it there. The parties also agree that a fire occurred sometime in the morning hours of May 10, 2020. For purposes of this motion only, defendant conceded that the fire destroyed plaintiff's personal property and that the

fire started in the Peterbilt tractor insured by defendant. The issue on appeal concerns whether, under these facts, plaintiff can recover property protection insurance (PPI) benefits from defendant.

Entitlement to PPI benefits begins with MCL 500.3121(1), which states in pertinent part, "Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle subject to" certain limitations. One such limitation is found in MCL 500.3123. As relevant to this appeal, that statute states:

> (1) Damage to the following kinds of property is excluded from property protection insurance benefits:
>
> \* \* \*
>
> (b) Property owned by a person named in a property protection insurance policy, the person's spouse or a relative of either domiciled in the same household, if the person named, the person's spouse, or the relative was the owner, registrant, or operator of a vehicle involved in the motor vehicle accident out of which the property damage arose.

By its plain terms, "MCL 500.3123(1)(b) excludes property damage from no-fault property protection coverage if the property owner, the person's spouse, or a relative of either residing in the same household, is 'named in a property protection insurance policy' and was 'the owner, registrant, or operator of a vehicle involved' in the accident." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146-147; 644 NW2d 715 (2002). In *State Farm Fire & Cas Co*, our Supreme Court held that the first requirement of MCL 500.3123(1)(b) is met so long as a person "was named in *a* property protection insurance policy"—it does not matter "[w]hether the no-fault policy covered a vehicle involved in the accident . . . ." *Id*. at 147.

Here, there is no dispute that plaintiff was named in a PPI policy—he was named in the PPI policy for his personal vehicle. It is also uncontested that plaintiff was neither the owner nor the registrant of the truck involved in the accident. The only dispute is whether he was the "operator" of a vehicle involved in the accident under MCL 500.3123(1)(b).[4]

The parties seemingly agree that plaintiff *was* the operator of the Peterbilt tractor when he drove it into the barn and parked it. And the parties seem to also agree that the pertinent question is not whether plaintiff was ever, at some point in time, the operator of the Peterbilt tractor, but whether plaintiff could be considered the "operator" of the tractor at the time of the accident.

"Operator" is not defined in the pertinent statutes. Generally, when interpreting an undefined statutory term, the term "must be accorded its plain and ordinary meaning." *Brackett v Focus Hope, Inc.*, 482 Mich. 269, 276, 753 N.W.2d 207 (2008). Reference to a dictionary can be

---

[4] For clarity, this is the sole issue raised in this appeal, and this opinion does not purport to decide any other issues.

helpful when trying to decipher a term's plain meaning. See *Farris v McKaig*, 324 Mich App 349, 354; 920 NW2d 377 (2018). The dictionary (somewhat redundantly) defines "operator" as "one that operates." *Merriam-Webster's Collegiate Dictionary* (11th ed). The same dictionary defines "operate" in relevant part as "to cause to function." *Merriam-Webster's Collegiate Dictionary* (11th ed).

If we were to rely on these definitions, we would readily conclude that plaintiff was not the "operator" of the parked Peterbilt tractor when the fire started. That is, plaintiff was not causing the truck to function at the relevant time. Indeed, the tractor was not even actively "functioning" then—it was parked, and its engine was off.

Alternatively, plaintiff argues that "operator" should be interpreted in accordance with the Michigan Vehicle Code. As plaintiff observes, this Court has previously interpreted the no-fault act *in pari materia* with the Michigan Vehicle Code "because they relate to an identical class of things." *Cason v Auto Owners Ins Co*, 181 Mich App 600, 606; 450 NW2d 6 (1989). MCL 257.36(a) defines "operator" as a person who "[o]perates a motor vehicle upon a highway or street." Here, when the fire started, the Peterbilt tractor was obviously on neither a highway nor a street, so plaintiff could not be an "operator" under this definition.

Looking past that, it is notable that the MCL 257.36(a)'s definition of "operator" is like the dictionary's definition of the word in that both define "operator" as one who "operates." MCL 257.35(a) of the Michigan Vehicle Code defines "operate" as "[b]eing in actual physical control of a vehicle." This in turn lends itself to providing a more useful definition of "operator" as used in MCL 500.3123(1)(b)—a person who is in actual physical control of a vehicle (regardless of whether it is on a highway or street).[5]

Still, even using this definition, we would conclude that plaintiff was not the "operator" of the parked Peterbilt tractor when the fire started. Nothing suggests that plaintiff was near the parked truck when the fire started, or that he had any way to exert actual control over the truck at that time. By all accounts, plaintiff was miles away from the barn and the Peterbilt tractor when the fire started. On these facts, no reasonable juror could conclude that plaintiff was "in actual physical control" of the Peterbilt tractor when the fire started.[6]

Based on the foregoing, regardless of whether we rely on a dictionary definition of "operator" or we define "operator" as used in MCL 500.3123 by reference to the Michigan Vehicle

---

[5] While defendant does not offer a clear definition of "operator" in its brief on appeal, defendant does agree that determining whether a person is an "operator" of a vehicle under MCL 500.3123(1)(b) should look to whether the person had "control" of the vehicle's use.

[6] Defendant suggests on appeal that plaintiff was in control of the Peterbilt tractor because he controlled its use—he was the one that parked the tractor in the barn, and he was the one that planned to move the tractor out of the barn to make his scheduled delivery. While plaintiff may have "controlled" the tractor's use in some abstract sense, he was not in "actual control" of the tractor in any sense; when the fire started, plaintiff was miles away with no way to move or otherwise exert actual control over the Peterbilt tractor.

Code, the result is the same—plaintiff was not the "operator" of the Peterbilt truck when the fire started. Accordingly, plaintiff was not barred by MCL 500.3123(1)(b) from collecting PPI benefits.

## IV. DEFENDANT'S ARGUMENT

Defendant offers an interesting, although somewhat difficult to follow, argument for why this result is wrong. According to defendant, we must first look to MCL 500.3121 to properly define "operator" as used in MCL 500.3123. Again, MCL 500.3121 provides that an insurer is liable to pay PPI benefits "for accidental damage to tangible property arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle . . . ." Defendant focuses on the "arising out of" language in MCL 500.3121, and notes that this Court has previously defined that term broadly to mean "having its origin in," "growing out of," "flowing from," or "incident to." See, e.g., *Johnston v Hartford Ins Co*, 131 Mich App 349, 357-358; 346 NW2d 549 (1984); *Kangas v Aetna Cas & Sur Co*, 64 Mich App 1, 13; 235 NW2d 42 (1975). Defendant next observes that it was plaintiff who drove the Peterbilt tractor into the barn and left it there, and contends that, from that point on, plaintiff controlled how long it remained parked. Then using the broad definition of "arising out of" just discussed, defendant asserts that "there can be no question that the fire was 'incident to' or 'flowing from' or 'having its origins in' [plaintiff's] operation of the Peterbilt," so "it can be concluded with certainty that if the fire started in the Peterbilt, the fire losses *arose from* [plaintiff's] *operation* of the Peterbilt." Defendant concludes by emphasizing that leaving a motor vehicle parked is generally considered "use" of the motor vehicle as a motor vehicle, and accordingly argues that, because it was plaintiff's operation of the Peterbilt tractor that placed the truck in the barn shortly before the fire, and because plaintiff was still "using" the Peterbilt tractor as a motor vehicle by leaving it parked in the barn, plaintiff should be considered the tractor's "operator" when the fire started.

In *Thornton v Allstate Ins Co*, 425 Mich 643; 391 NW2d 320 (1986), our Supreme Court addressed MCL 500.3105, which like the statute at issue here, addresses the payment of benefits for damages "arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle." As part of its analysis, *Thornton* addressed the "arising out of" definition from *Kangas* that defendant relies on here. Pertinently, *Thornton* noted that the language construed by *Kangas* had a "significant difference" from the statutory language at issue—the contract in *Kangas* used the language "arising out of the use of a motor vehicle," whereas the statutory language says "arising out of the use of a motor vehicle as a motor vehicle." *Thornton*, 425 Mich at 656-657. *Thornton* believed that the latter language was more limited, and concluded:

> In drafting MCL 500.3105(1), the Legislature limited no-fault PIP benefits to injuries arising out of the "use of a motor vehicle as a motor vehicle." In our view, this language shows that the Legislature was aware of the causation dispute and chose to provide coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for." [*Thornton*, 425 Mich at 659.]

With this proper conceptualization of "arising out of" in hand, defendant's argument loses steam. While it could be argued that the fire at issue "flowed from" or "had its origin in" plaintiff's use of the Peterbilt tractor, nothing suggests that plaintiff's operation of the tractor as a motor

-6-

vehicle was anything more than incidental—or had a "but for" relation—to the fire. In other words, we reject defendant's assertion that "it can be concluded with certainty that if the fire started in the Peterbilt, the fire losses *arose from* [plaintiff's] *operation* of the Peterbilt."

Turning to defendant's discussion that leaving a motor vehicle parked can be "use of the motor vehicle as a motor vehicle," the premise is sound. See, e.g., *Mich Millers Mut Ins Co v Lancer Ins Co*, 23 F Supp 3d 850, 853 (ED Mich, 2014). But defendant's extension of this premise—that a person who "uses" a vehicle by leaving it parked is the vehicle's "operator"—is not. A person who parks a motor vehicle, turns off the vehicle's engine, and travels miles away is, without more, no longer the vehicle's "operator" under any definition of the word for the reasons explained earlier in this opinion.

## V. CONCLUSION

For the reasons stated in this opinion, we conclude that the trial court erred when it held as a matter of law that plaintiff was the "operator" of the Peterbilt tractor and was accordingly barred from collecting PPI benefits under MCL 500.3123(1)(b). The trial court's order granting defendant's motion for summary disposition on those grounds is reversed. We further order the trial court to enter an order granting partial summary disposition in favor of plaintiff stating that he is not excluded by MCL 500.3123(1)(b) from recovering PPI benefits.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle