**BASF WYANDOTTE CORPORATION, a Michigan Corporation, Plaintiff,**

**v.**

**TRANSPORT INSURANCE COMPANY, a Texas Corporation, Defendant.**

Civ. A. No. 80–70222.

United States District Court, E. D. Michigan, S. D.

Oct. 8, 1981.

---

1. 29 U.S.C. § 203(e)(2)(C).    2. U.S.Const. art. 1, § 8, cl. 3.

Denenberg, Tuffley, Thorpe, Bocan & Patrick by John L. Hopkins, Jr., Southfield, Mich., for plaintiff.

Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen by Charles A. Huckabay, Detroit, Mich., for defendant.

### OPINION

GILMORE, District Judge.

The issue in this diversity case is whether the damage to tangible property suffered by the plaintiff arose out of the use of defendant insured's motor vehicle as a motor vehicle within the meaning of M.C.L.A. § 500.3121(1). The Court concludes it did, and will grant plaintiff's motion for summary judgment.

The case is before the Court upon a stipulation of facts. The stipulated facts show that on January 23, 1979, a tanker load of the chemical ethylene diamine (hereinafter "EDA") was delivered to the cite of the BASF Wyandotte polyol plant. The "EDA" was purchased from Union Carbide corporation and transported to the BASF Wyandotte plant by a tractor/tanker owned by D.S.I. Transports, Inc., and insured by defendant Transport Insurance Company on the date of the accident.

William McClellan, an employee of BASF Wyandotte, directed the driver of the tanker truck to park his unit so that the contents of the tanker could be unloaded into the polyol plant receiving station. McClellan connected a discharge hose owned by plaintiff to the tanker and to the receiving connection in plaintiff's storage system. He then opened the appropriate lines and valves and began the unloading process, or flow, of "EDA".

After checking to make sure that the unloading was proceeding correctly, McClellan left the tanker, returning every ten minutes or so to check on the operation. Upon returning at approximately 1:20 p.m., McClellan discovered the hose had ruptured, and that the "EDA" had spilled in the vicinity of the tanker. The rupture took place on the discharge hose, approximately one foot from the connection to the tanker.

Plaintiff, through its employee McClellan, had active control of the unloading process once the D.S.I. Transport truck was parked in the location designated by the plaintiff.

Plaintiff claims damages, including lost profits, in the approximate amount of $250,-000 resulting from the chemical spill.

The pertinent sections of the Michigan "No-Fault" Statute, M.C.L.A. § 500.3101(1) et seq. provide as follows:

"The owner or registrant of a motor vehicle required to be registered in this State shall maintain security for payment of benefits under...property protection insurance...

\* \* \* \* \* \*

"(2)(c) 'Motor' vehicle as used in this chapter means a vehicle, including a trailer, operated or designed for operation upon a public highway by a power other than muscular power... "

And M.C.L.A. § 500.3121(1) relating to property protection benefits provides:

"(1) Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle subject to the provisions of this section... "

There is no question that a tank truck is a motor vehicle. The issue for the Court is whether the vehicle was being used as a motor vehicle at the time of the unloading of the chemicals so as to make defendant liable.

Defendant argues that the Statute (M.C.L.A. § 500.3121(1)) does not include the language "loading and unloading" in defining situations in which the insurer is liable to pay property protection benefits, and that under the principle of "expressio unius est exclusio alterius" the omission of the language "loading and unloading" implies its exclusion. It cites numerous authorities for the proposition that the express mention of one thing in a statute implies the exclusion of another similar thing.

Defendant further argues that the unloading of the insured vehicle under the present facts did not constitute the use of a motor vehicle *as a motor vehicle.* It claims that in construing a statute every word must be considered, and no clause or word of the statute may be ignored. It says unloading a vehicle is not the use of a motor vehicle as a motor vehicle, and, therefore, there is no liability under the policy.

■ The Court feels that the defendant's interpretation of the provisions of the statute is unduly narrow. The Michigan No-Fault Act is remedial in nature and should be broadly construed to effectuate coverage. *See Advisory Opinion re 1972 PA 294,* 389 Mich. 441, 208 N.W.2d 469 (1973); *McPherson v. Auto Owners Insurance Company,* 90 Mich.App. 215, 282 N.W.2d 289 (1979); and *Buckeye Union Insurance Company v. Johnson,* 108 Mich.App. 46, 310 N.W.2d 268 (1981).

■ Using the broad remedial interpretation that is mandated in the interpretation of the No-Fault Insurance Act, it becomes clear that use of a motor vehicle as a motor vehicle must include the loading and unloading of the vehicle. The motor vehicle involved in this case is a commercial tank truck, and certainly one of its basic uses is its loading and unloading. The term "use" should be understood in its most comprehensive sense, and clearly is not confined merely to motion on the highway. It extends to any activity utilizing the insured vehicle in the manner intended or contemplated by the insured. A tank truck would be of no use were it not loaded and unloaded.

■ It is argued by the defendant that the term "arising out of", found in M.C.L.A. 500.3121(1) must mean proximate cause in a strict legal sense, and for this proposition cites the opinion of Judge Cohn of this Court in *Ford Motor Company v. Insurance Company of North America,* 494 F.Supp. 846 (1980). Defendant claims there is no direct causal relationship between the use of the tank truck as a motor vehicle and the property damage suffered by BSAF Wyan-

dotte. Its claim is that if damages result from the activities of an employee of the plaintiff, then the defendant is insulated from liability because of an intervening proximate cause.

It is clear that the term "arising out of" does not mean proximate cause in the strict legal sense. It was pointed out in the case of *Shinabarger v. Citizens Mutual Insurance Company,* 90 Mich.App. 307, 282 N.W.2d 301 (1979), that:

"Where the use of the vehicle is one of the causes of the injury, a sufficient casual connection is established even though there exists an independent cause...The relationship between the use of the vehicle and the injury need not approach proximate cause..." *Id.* at 313, 282 N.W.2d 301.

The Court went on to note in *Shinabarger* that loading is the use of a motor vehicle. By logical extension, if use of a motor vehicle includes loading, it clearly includes unloading.

■ In this case the tank truck, both tractor and trailer together, constitute a motor vehicle for the purpose of the Michigan No-Fault Act. Inherent in the use of a commercial tank truck is the loading, transporting, and unloading of the cargo. Where the motor vehicle in question is a tank truck, as here, and loading and unloading are inherent in its use, as here, then it is clear that it is covered by the statutory language. Therefore plaintiff's motion for summary judgment will be granted and defendant's motion will be denied. Plaintiff shall arrange with the Clerk for a date for the taking of testimony as to damages.

A judgment embodying the terms of this opinion may be presented. Costs may be taxed.