OHIO CASUALTY INSURANCE GROUP v ROBINSON

Docket No. 62145. Submitted December 14, 1982, at Detroit.—Decided July 11, 1983.

Eugene Robinson was injured when he slipped on some grease while loading a jack into his pickup truck. He was being assisted by Tom Marks, who owned the repair garage in which the accident occurred. Eugene and Edith Robinson brought an action against Marks for negligence. Marks's insurer, Ohio Casualty Insurance Group, then brought an action against the Robinsons and Mr. Robinson's automobile insurer, Transamerica Insurance Group, seeking a declaration that Marks was an insured under Robinson's policy and that, therefore, Ohio Casualty was not solely liable for payment of damages for Robinson's injuries. The Monroe Circuit Court, William J. Weipert, Jr., J., granted summary judgment in favor of Ohio Casualty. Transamerica appeals, alleging that Marks was not "using" the truck and is not, therefore, defined as an insured under the Transamerica policy, that Marks was excluded from coverage as the operator of a repair shop, that Marks was not a named insured under the "use of other automobiles" provision, and that Ohio Casualty is the primary insurer and is therefore obligated to pay. *Held:*

1. Marks was "using" the truck for the purposes of the insurance policy when Robinson was injured.

2. Marks, as the operator of a repair facility, was specifically

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 am Jur 2d, Automobile Insurance § 194.

What are accidents or injuries "arising out of ownership, maintenance, or use" of insured vehicle. 15 ALR4th 10.

[2, 3] 7 Am Jur 2d, Automobile Insurance §§ 25, 348.

Validity and construction of "no-fault" automobile insurance plans. 42 ALR2d 229.

[3] Validity of exclusion in automobile insurance policy precluding recovery of no-fault benefits for injuries arising out of the ownership, maintenance, or use of an uninsured vehicle owned by an insured. 18 ALR4th 632.

excluded from coverage. The trial court erred in determining otherwise.

3. The allegation regarding the "use of other automobiles" provision is not properly before the Court of Appeals.

4. Because Marks is excluded, Transamerica has no pro rata liability under the Ohio Casualty primary insurance provisions.

5. Robinson's injury arose out of the use of his truck as defined in the no-fault insurance act. Because there is a question of whether Marks's garagekeeper's policy or Robinson's no-fault automobile policy is the primary source of Robinson's recovery of benefits, the case is to be remanded for further proceedings.

Reversed and remanded.

MacKENZIE, J., agreed that Marks was excluded as an insured under Transamerica's policy. She dissented, however, from the majority's directions for remand because the issue of Robinson's no-fault insurance was not raised by the parties, the issue belongs in the separate action by the Robinsons against Marks, Robinson's no-fault carrier may not be his primary source of recovery, and is not his primary source if he may recover damages in the negligence action against Marks. She would reverse the summary judgment and remand for entry of an order of summary judgment for Transamerica.

### OPINION OF THE COURT

1. INSURANCE — AUTOMOBILES — USER OF AUTOMOBILE.

   The "user" of an automobile, for purposes of an insurance policy covering injuries arising from the use of an automobile, need not also be the driver of the vehicle.

2. INSURANCE — NO-FAULT INSURANCE.

   The automobile no-fault insurance act was intended to abolish, in part, determinations of fault based on tort.

### PARTIAL DISSENT BY MacKENZIE, J.

3. INSURANCE — NO-FAULT INSURANCE — TORT LIABILITY.

   *The automobile no-fault insurance act did not abolish the tort liability of a defendant whose wrongful act did not involve his ownership, maintenance, or use of a motor vehicle, even though the action may have also arisen out of the plaintiff's ownership, maintenance, or use of a motor vehicle.*

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark* (by *Mark E. Morley*), for plaintiff.

*Ready, Sullivan & Ready* (by *Michael L. Heller*), for defendant Transamerica Insurance Group.

Before: CYNAR, P.J., and N. J. KAUFMAN and MacKENZIE, JJ.

N. J. KAUFMAN, J. On January 20, 1978, Eugene Robinson drove his pickup truck to Tom Marks's Garage, a repair garage owned by Tom Marks. Robinson went there to pick up a hydraulic jack. As Robinson and Marks were loading the jack into the truck, Robinson slipped on some grease on the garage floor. He fell and suffered a back injury.

Eugene and Edith Robinson sued Tom Marks for negligence. Mr. Marks's insurer, Ohio Casualty Insurance Group, brought this action for declaratory relief to establish that Mr. Marks is also an insured under Mr. Robinson's automobile policy with Riverside Insurance Company, a member of the Transamerica Group.[1] Under Ohio Casualty's theory, if Mr. Marks were an insured under the Transamerica policy, then Ohio Casualty would not be solely liable for Mr. Robinson's injuries. The Monroe County Circuit Court granted summary judgment for Ohio Casualty on January 6, 1982. Transamerica appeals.

In this case we are faced with the confusing task of determining whether the noninjured party (Mr. Marks) to the accident would be covered by the injured party's insurance policy (Mr. Robinson's policy with Transamerica). Transamerica raises four issues in this regard, which we now consider.

[1] For simplicity, we will consider Riverside Insurance Company and the Transamerica Insurance Group as the same party and refer to them collectively as "Transamerica". Thus, references to Mr. Robinson's "Transamerica" policy mean the policy written by Riverside as a Transamerica member. Transamerica is the defendant-appellant in this action. Ohio Casualty is the plaintiff-appellee. Eugene and Edith Robinson are defendants, and Mr. Marks is not a party to this action.

## I

Transamerica first argues that Marks was not "using" the truck and therefore is not a defined insured under the Transamerica policy. In Section I of the policy Transamerica agrees to pay for injuries "arising out of the ownership, maintenance, or use of the insured automobile, including the loading and unloading thereof". It is nowhere required in the policy that the "user" also be the driver, and case law does not impose such a construction. See, *e.g., BASF Wyandotte Corp v Transport Ins Co,* 523 F Supp 515 (ED Mich, 1981). The clear wording of the Transamerica policy designates Mr. Marks as an "insured" while he is loading or unloading the insured vehicle. We therefore find no error in the trial court's conclusion that Mr. Marks was "using" the vehicle when Mr. Robinson was injured.

## II

Transamerica next argues that Mr. Marks was specifically excluded from coverage because he is a "person operating a repair shop". Section III of the policy provides that:

"The insurance with respect to any person or organization other than the Named Insured or spouse does not apply:

"(1) to any person or organization or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any occurrence arising out of the operation thereof * * *."

Ohio Casualty argues that Mr. Marks did not operate "an automobile sales agency [or] repair shop" under the policy because he repaired trucks

and trailers, not automobiles. Assuming for the sake of argument that only "automobile" repair shops are excluded from coverage, we believe Mr. Marks's business fits within the exclusionary language of Transamerica's policy.[2] We conclude this because of the policy's definition of "automobile" in Section IV:

"Except where specifically stated to the contrary, the word 'automobile' wherever used shall include its equipment and other equipment permanently attached thereto and shall mean the described automobile, a land motor vehicle, trailer, semi-trailer or house-trailer, not operated on rails or crawler-treads, but, except with respect to Section (2) Coverage C Medical Payments, none of the foregoing shall include a motorcycle unless specifically described in the Policy, and except while actually upon public roads, does not mean a farm type tractor or equipment * * *."

A truck is a "land motor vehicle", MCL 475.1; MSA 22.531, and is nowhere excluded by the policy from the "automobile" definition. In fact, the insured "automobile" in this case is a truck. The trial court found, though, that Mr. Marks was not excluded under Section III. This finding is clearly erroneous and merits reversal.

### III

Transamerica raises as its third issue the argument that Mr. Marks was not a named insured

_____

[2] We are not sure that "automobile" modifies all establishments listed ("sales agency, repair shop, service station, storage garage, or public parking place"). Instead, it may modify only "sales agency". We believe this may be so because service stations and public parking places are not necessarily limited to "automobiles" in the restrictive sense of sedans and to the exclusion of trucks, especially light trucks like vans and pickups. In any event, we need not decide this issue for the reasons demonstrated in the text.

under the "use of other automobiles" section of the Transamerica policy. We are unable to consider this issue because it was not addressed by the trial court.

## IV

In its final issue, Transamerica argues that, if Tom Marks is an insured under the Transamerica policy, Ohio Casualty would still be obligated to pay as the primary insurer of the Marks premises under Ohio Casualty's policy. That policy states:

"The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

"When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below * * *."

Transamerica argues that the Ohio Casualty policy establishes primary liability by Ohio Casualty to the policy limit of $100,000. Ohio Casualty argues that the Transamerica policy applies "on the same basis", and therefore Transamerica has pro-rata liability. As discussed in the second issue, the Transamerica policy excludes Mr. Marks as the operator of a repair shop. The Transamerica policy therefore does not apply "on the same basis" as the Ohio Casualty policy, and Transamerica has no pro-rata liability.

V

As mentioned earlier, this case involves a determination of whether the noninjured party to the accident would be covered by the injured party's insurance policy. Throughout these proceedings the parties seem to have assumed that the Robinsons have a cause of action against the garage owner's insurer, Ohio Casualty.[3] It has become apparent in our treatment of the issues, though, that Mr. Robinson's injury arose out of the use of his vehicle as that term is used in the no-fault act. MCL 50).3105(1); MSA 24.13105(1). See MCL 500.3106(c); MSA 24.13106(c); *Nickerson v Citizens Mutual Ins Co,* 393 Mich 324, 331; 224 NW2d 896 (1975). It would be contrary to the strong public policy behind the no-fault act if Transamerica were completely absolved of liability for injuries arising out of the use of an automobile it insures.

The trial court and Ohio Casualty in its brief cite 16 Couch, Insurance, 2d, § 62:1 as supporting pro rata liability among insurers. The two Michigan cases cited in Couch, however, do not support pro rata liability. In *Werner v Travelers Indemnity Co,* 55 Mich App 390; 222 NW2d 254 (1974), the plaintiff's decedent was killed in an accident involving an uninsured motorist. The plaintiff's decedent and the owner-driver of the car she was riding in were insured by different companies. Despite a "pro rata" clause in the driver's policy, the Court held that his policy was the primary policy for the passenger's representative to look to for recovery. The passenger's policy was secondary

---

[3] It must be remembered that Mr. Robinson's underlying action is collateral to this appeal. This serves not only to secrete the full factual setting, but also to limit the res judicata effect of these pronouncements. This section of our opinion is offered to assist the trial court on remand so that it might be better able to render a just verdict.

and would pay only for the excess over the primary policy's limit. In *Hartman v Ins Co of North America,* 106 Mich App 731; 308 NW2d 625 (1981), *lv den* 414 Mich 890 (1982), a no-fault case, the Court established a "priority" of claims for injuries to a bicyclist in a bicycle-automobile accident. The bicyclist's no-fault carrier, if any, would be primarily liable, followed by the insurer of a "relative domiciled in the same household" and, finally, the insurer holding the policy on the automobile involved in the accident. See also *Underhill v Safeco Ins Co,* 407 Mich 175, 182; 284 NW2d 463 (1979) (motorcyclist). Neither case stands for pro rata liability—in fact, in stark contrast, they stand for a system of priorities involving primary and secondary liability.

The difficulty which now arises involves the conflict between Mr. Robinson's no-fault policy on his automobile and Mr. Marks's garage policy. The no-fault act was intended to abolish, in part, tort determinations of fault. *Shavers v Attorney General,* 402 Mich 554, 579; 267 NW2d 72 (1978). By way of analogy only, two panels of this Court have held that the no-fault act's abolition of tort liability is strong enough to overcome the public policy behind the garage keeper's liability act's rebuttable presumption of negligence when a vehicle is returned damaged. *Buckeye Union Ins Co v Johnson,* 108 Mich App 46; 310 NW2d 268 (1981), *lv den* 414 Mich 873 (1982); *Liberty Mutual Ins Co v Ins Co of North America,* 117 Mich App 197; 323 NW2d 650 (1982). See MCL 256.541; MSA 9.1721.[4]

---

[4] A third panel in *Liberty Mutual Ins Co v Allied Truck Equipment Co,* 103 Mich App 33; 302 NW2d 588 (1981), held that the Legislature is presumed to have known of the garage keeper's liability act when it enacted the no-fault act. The exceptions to no-fault liability found in MCL 500.3135; MSA 24.13135 did not involve bailments for hire, this third panel reasoned, and therefore the no-fault act would not bar a negligence action under the garage keeper's liability act. This

On remand the trial court should give appropriate consideration to this issue and determine whether Mr. Robinson's primary source of recovery is his own no-fault carrier.

Based on the second issue, we reverse summary judgment and remand for further proceedings.

CYNAR, P.J., concurred.

MACKENZIE, J. *(concurring in part and dissenting in part).* I agree with the majority that Marks, as a person operating a repair shop, was excluded from coverage under Robinson's policy with Transamerica. I respectfully dissent from the majority's directions for remand.

The majority has ordered that, on remand, the circuit court shall determine whether Robinson's primary source of recovery is his own no-fault automobile insurance carrier. I have four objections to this result.

(1) No such issue was raised by the parties.

(2) In a separate action, Robinson is suing Marks for negligence. In this action, the Ohio Casualty Insurance Company, Marks's garage keeper's premises liability insurance carrier, sought a declaratory judgment that Marks was an "insured" under Robinson's no-fault automobile insurance policy and that Transamerica, the no-fault carrier, had a duty to defend Marks and afford him coverage in the action between Robinson and Marks. The issue raised by the majority is outside the

_____

holding, however, does not preclude the courts from limiting Mr. Robinson to his no-fault coverage as the primary source because this case does not involve the bailment of an automobile. While the *Liberty Mutual v Allied* case thus does not affect our discussion, the *Buckeye Union* and *Liberty Mutual v Ins Co of North America* cases do affect our discussion because they demonstrate the strong public policy behind primary coverage of no-fault insurance.

scope of this action and belongs in the action between Robinson and Marks.

(3) Robinson's no-fault automobile insurance carrier is not his primary source of recovery if Robinson's action against Marks falls within one of the exceptions to the abolition of tort liability stated in MCL 500.3135(2); MSA 24.13135(2).

(4) In *Citizens Ins Co of America v Tuttle,* 411 Mich 536; 309 NW2d 174 (1981), the Court held that the no-fault act did not abolish the tort liability of a defendant whose wrongful act did not involve his ownership, maintenance, or use of a motor vehicle, even though the action may have also arisen out of the plaintiff's ownership, maintenance, or use of a motor vehicle. Here, Robinson has represented to both this Court and the circuit court that his complaint against Marks alleges that the accident was caused by Robinson's slipping on grease on the floor of Marks's garage. If this is, in fact, the causal mechanism on which Robinson relies in his action against Marks, then Robinson's action against Marks falls within the rule stated in *Tuttle,* and Marks's loading of Robinson's motor vehicle at the time of the accident is merely a fortuitous coincidence of no relevance. Robinson's no-fault automobile insurance carrier is not his primary source of recovery if *Tuttle* allows him to recover damages in a negligence action against Marks.

Because this case was before the circuit court on cross motions for summary judgment, I would reverse and remand the case for entry of an order of summary judgment for Transamerica.