CELINA MUTUAL INSURANCE COMPANY v AETNA
LIFE & CASUALTY COMPANY

Docket No. 83892. Argued October 4, 1989 (Calendar No. 4). Decided
April 3, 1990.

Celina Mutual Insurance Company, as subrogee of Corrosion
Control Company, brought an action in the Grand Traverse
Circuit Court against Aetna Life & Casualty Company, the no-
fault insurer of B & L Hotshot, Inc., seeking a declaration that
Corrosion Control had become an additional insured under the
omnibus clause of Aetna's no-fault policy issued to B & L, and
that Aetna wrongfully refused to defend Corrosion Control in
another action alleging injury arising from the use of a B & L
truck, and seeking recovery of monies paid to the plaintiff in
that action as well as the cost of Corrosion Control's defense.
The court, William R. Brown, J., denied Aetna's amended
motion for summary disposition on the ground that Aetna had
a duty to defend Corrosion Control in the underlying action as
an additional insured under the omnibus insured clause of
Aetna's liability policy, and that the plaintiff in that action had
alleged injury within the scope of the policy. The Court of
Appeals, MAHER, P.J., and GRIBBS and L. F. SIMMONS, JJ.,
affirmed in an unpublished opinion per curiam (Docket No.
95658). Aetna appeals.

In an opinion by Justice ARCHER, joined by Chief Justice
RILEY and Justice BOYLE, and an opinion by Justice BRICKLEY,
joined by Justice GRIFFIN, the Supreme Court *held:*

Corrosion Control was not an insured under Aetna's policy,
and Celina had no claim under the Aetna policy.

Justice ARCHER, joined by Chief Justice RILEY and Justice
BOYLE would hold that in order for a claim to fall within the
scope of the no-fault act and third-party liability policies issued
pursuant to the act, an injured plaintiff must show more than
that the injuries arose merely from the use, operation, or
maintenance of a motor vehicle. Because the act abrogates tort
liability arising from the use, operation, or maintenance of a
motor vehicle, a defendant's wrongful conduct which gives rise
to that liability also must arise from the use, operation or
maintenance of a motor vehicle. Absent this causal link, the
no-fault act does not abrogate the tortfeasor's liability, and the

plaintiff's right to compensation, as against the tortfeasor, is determined only with regard to fault under common-law tort principles.

In this case, the causal link is missing. Because Corrosion Control was negligent, if at all, under a landowner's liability theory and not as a result of the use, ownership, or maintenance of the boom truck, it is a nonmotorist defendant, whose tort liability is beyond the scope of the no-fault act and Aetna's policy. In addition, because the underlying complaint failed to allege a claim against Corrosion Control falling within the scope of Aetna's no-fault policy, Corrosion Control had no rights under that policy, and Aetna likewise had no duty to indemnify Celina, as Corrosion Control's subrogee, for the costs of Corrosion Control's defense or the settlement paid to the injured B & L employee.

Justice BRICKLEY, joined by Justice GRIFFIN, concurring in the result, agreed that Corrosion Control is not covered under Aetna's policy, but stated that the issue of coverage is a matter not of statutory construction, but of contract interpretation.

Corrosion Control does not become an additional insured pursuant to § II(d) of Aetna's policy, since it is not liable "because of" the acts or omissions of the operator, an insured under § II(c). The phrase "because of" requires more than merely a sequential link in the chain of events; it implies a relationship connecting the culpable acts of persons using the vehicle to the liability of another, who then becomes an insured.

If Corrosion Control were to be held liable at all, it would be on account of its own negligence, not because it must answer vicariously for the acts of the operator of the boom truck. Thus, Corrosion Control's negligence would have to be a proximate cause of the operator's damages. Corrosion Control, therefore, cannot be held to be liable unless it were shown that its liability arose "because of" its own negligent acts or omissions, not "because of" acts or omissions of the operator.

Justice LEVIN, joined by Justice CAVANAGH, concurring, stated that because the injured employee did not seek to recover against Corrosion Control because of acts or omissions of his employer, B & L Hotshot, Inc., or for acts or omissions of another person while that person was using the insured vehicle, but rather sought to recover against Corrosion Control for its acts or omissions not involving the use of the vehicle, Corrosion Control was not an insured under the policy and Aetna was not subject to liability.

Reversed and remanded.

*Menmuir, Zimmerman, Kuhn & Bearup* (by *R. Edward Kuhn*) for the plaintiff.

*Stephen M. Overton* for the defendant.

ARCHER, J. The issue presented is whether a motor vehicle no-fault insurer, pursuant to the omnibus clause of its no-fault policy, should be held liable for all or part of a settlement a landowner's general liability insurer pays where an injury arising out of the use of a motor vehicle occurs on the landowner's premises. We hold the no-fault insurer has no duty to indemnify the general liability insurer because the landowner's conduct did not arise from the use of a motor vehicle and was beyond the scope of the no-fault policy.

I

Shell Oil Company contracted with Ernest E. Kuhns, doing business as Corrosion Control Company, to sandblast pipes. Shell Oil, in turn, contracted with B & L Hotshot, Inc (BLH), to deliver pipes to Corrosion Control's premises, and, after sandblasting, to pick up the sandblasted pipes and return them to Shell.

On April 10, 1980, Russell Naasko, a BLH foreman, and another BLH employee drove to Corrosion Control's premises in a BLH boom truck to retrieve the sandblasted pipes. During the loading operation, Naasko held a guideline attached to the pipe being lifted by the boom.[1] Naasko was injured when the boom came into contact with an overhead electrical power line Consumer's Power Company maintained on Corrosion Control's premises.

---

[1] The truck had a flat bed with a mounted boom crane. While the pipes were being loaded onto a separate trailer, outriggers immobilized the truck.

Naasko was severely burned and collected workers' compensation benefits.

In June 1981, Naasko sued Corrosion Control and Consumer's Power Company in Kalkaska Circuit Court. Naasko asserted a landowner's liability claim against Corrosion Control. In his complaint, Naasko alleged that Kuhns ordered the BLH employee, who had delivered the pipes to Corrosion Control's premises, to place them near the power line where they would be sandblasted. Naasko claimed that, by storing the sandblasted pipes near an overhead power line, Corrosion Control created a hazardous work environment. He further alleged that Kuhns knew or should have known that, when BLH employees came back to pick up the finished pipes, the boom would come into contact with the overhead power line. Naasko's wife asserted a loss of consortium claim.

Celina Mutual Insurance Company, Corrosion Control's general liability insurer, agreed to defend Corrosion Control and filed an answer on its behalf. The only affirmative defense raised was Naasko's own negligence.

In June 1983, six months after mediation, Celina tendered to Aetna Life & Casualty Company, BLH's no-fault motor vehicle insurer, its defense of Corrosion Control. Celina claimed that, through the acts or omissions of Naasko and his co-workers, Corrosion Control became an additional insured under the omnibus clause[2] of Aetna's no-fault policy[3] issued to BLH. Aetna, however, refused to defend Corrosion Control. The following day, which was less than one month before trial, Naasko settled with Corrosion Control for $32,000, which Celina paid.

---

[2] Under an omnibus clause, liability coverage is extended to third persons legally responsible for the use of an insured vehicle. See n 8 and accompanying text.

[3] See n 7 and accompanying text.

Celina, subrogated to any claim Corrosion Control might have against Aetna, then filed the present lawsuit in November 1983. In addition to requesting a declaration that Aetna wrongfully refused to defend Corrosion Control in the underlying suit, Celina sought to recover the $32,000 settlement paid to Naasko and the cost of Corrosion Control's defense.

Both parties moved for summary disposition.[4] This appeal, however, only concerns Aetna's amended motion for summary disposition in which Aetna claimed that, even if the BLH vehicle was insured under its policy,[5] Corrosion Control had no contractual rights under the policy because Naasko's complaint against Corrosion Control did not state a claim arising out of the use, ownership, or maintenance of a motor vehicle.[6]

The trial court rejected Aetna's argument and denied the motion, holding that, even though Naasko's complaint alleged a landowner's liability claim, Naasko's injuries arose from the use of a motor vehicle.[7] In light of the omnibus insured

---

[4] Celina moved for summary judgment under GCR 1963, 117.2(3) (no genuine issue of material fact), claiming that Corrosion Control was entitled to defense and indemnification as a matter of law. The trial court has not yet ruled on this motion, however, since Celina has failed to present evidence that BLH owned the boom truck in question.

[5] Aetna has not admitted that its policy insured the BLH boom truck because Celina has not produced any evidence that BLH owned the vehicle, or that it was insured under Aetna's policy.

[6] Aetna also argued that, under *Johnston v Hartford Ins Co,* 131 Mich App 349; 346 NW2d 549 (1984), Naasko's injuries did not arise from the use of a motor vehicle.

[7] The bodily injury clause of Aetna's policy provides:

The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and *arising out of the ownership, maintenance or use, including loading and unloading . . . of an owned automobile or of a temporary substitute automobile, and the company shall have the right*

clause[8] of Aetna's policy, the trial court concluded that Corrosion Control was an additional insured under Aetna's liability policy. Consequently, the court held that Naasko's complaint alleged an injury within the scope of the policy.

Aetna appealed, and the Court of Appeals unanimously affirmed in an unpublished per curiam opinion, decided June 23, 1988 (Docket No. 95658). The Court held that Corrosion Control was an additional insured under Aetna's omnibus clause, and that it was "using" the boom truck as a motor vehicle when Naasko was injured. The Court, consequently, concluded that Naasko had pled a cause of action within the scope of Aetna's policy.

Aetna subsequently applied for leave to appeal, which we granted to determine whether Aetna is liable to Celina for the costs of Corrosion Control's defense and the $32,000 settlement Celina paid to Naasko. 432 Mich 892 (1989).

---

*and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient . . . . [Emphasis added.]*

[8] The following are insureds under the policy:

(a) the named Insured;

* * *

(c) any other person while using an owned automobile or a temporary substitute automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other persons shall be an Insured only if he is:

(1) a lessee or borrower of the automobile, or

(2) an employee of the named Insured or of such lessee or borrower;

(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an Insured under (a), (b) or (c) above.

II

Three elements establish prima facie liability coverage under Aetna's policy. First, the injury must arise from the use of a motor vehicle.[9] Second, the tortfeasor must be an insured.[10] Finally, the motor vehicle from which the injury arose must be "an owned or a temporary substitute" vehicle within the meaning of the policy.

Aetna alleged in its amended motion for summary disposition that, pursuant to MCR 2.116(C)(8), Celina had failed to state a claim for which the law could grant relief because Aetna, as a matter of law, had no duty to indemnify or defend Corrosion Control in Naasko's suit. A motion for summary disposition brought under MCR 2.116(C)(8) tests the legal sufficiency of the plaintiff's complaint. *Abel v Eli Lilly & Co,* 418 Mich 311, 323; 343 NW2d 164 (1984), cert den 469 US 833 (1984). For purposes of Aetna's amended motion for summary disposition, therefore, we assume, without deciding, Celina's allegation that Naasko's injuries, as against his employer, arose from the use of the BLH boom truck and were otherwise within the scope of Aetna's policy. Consequently, our task is to determine whether Corrosion Control is an insured under Aetna's policy.

This Court held in *Citizens Ins Co of America v Tuttle,* 411 Mich 536; 309 NW2d 174 (1981), that the no-fault act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.,* did not abrogate a nonmotorist defendant's tort liability even though his negligence caused a motor vehicle accident. Defendant Tuttle's cow was roaming on a highway when a Zaiger Beverage Company truck struck the cow. Citizens Insurance Company, Zaiger Beverage's

[9] See n 7 and accompanying text.
[10] See n 8 and accompanying text.

insurer, paid Zaiger's no-fault claim for the damage to its truck. Subsequently, Citizens Insurance, subrogated to Zaiger's claim, sued Tuttle.

We began our analysis in *Tuttle,* by examining the language of the section of the no-fault act abrogating tort liability:

> (2) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101(3) and (4) was in effect is abolished . . . . [MCL 500.3135(2); MSA 24.13135(2).]

Subsection (2) addresses tort liability that arises from either a defendant's wrongful act or failure to act. 411 Mich 544. Only that liability, however, arising from a defendant's "ownership, maintenance, or use of a motor vehicle" is abrogated. Thus, from the plain and unambiguous statutory language, we concluded that, in order for tort liability to be abrogated, the no-fault act required more than a plaintiff's injuries having arisen merely from the use of a motor vehicle. The defendant's wrongful act or omission, upon which his liability was predicated, must also have arisen from the ownership, maintenance, or use of a motor vehicle. In addition to the plain and unambiguous statutory language, we also found support for this position in the model no-fault act,[11] the unreasonableness of a contrary construction in light of other sections of the Michigan no-fault act,[12] and the act's policy to eliminate duplicative recoveries and reduce insurance costs.[13]

Because defendant Tuttle was negligent, if at

[11] 411 Mich 545-547.

[12] *Id.* at 548-551.

[13] *Id.* at 551-554.

all, for the improper keeping of his cow, we concluded that his wrongful act did not arise from the ownership, maintenance, or use of a motor vehicle. The act, consequently, did not abrogate his tort liability:

> In the instant case, the wrongful act asserted is Tuttle's improper keeping of his cow. Such a wrongful act does not relate to the ownership, maintenance or use of a motor vehicle. Tuttle's tort liability, if any, arose only from his alleged wrongful keeping of the cow, not from the ownership, maintenance or use of a motor vehicle.
>
> Tuttle would have been subject to tort liability for his wrongful keeping of a cow whether it collided with a motor vehicle, trampled a rose garden, or walked through a plate glass window. His tort liability in the instant case no more "arose from" the ownership, maintenance or use of a motor vehicle than it would have "arisen from" the ownership, maintenance or use of a rose garden or a plate glass window. It arose solely from the wrongful keeping of a cow. [411 Mich 545.]

Hence, Tuttle's conduct was beyond the scope of the no-fault act. His conduct was still subject to tort liability, even though the damage to the plaintiff's truck arose out of the plaintiff's use of a motor vehicle and the damage was otherwise compensable under first-party benefits provided by the Citizens Insurance no-fault policy.

### III

The analysis of Celina's argument that Corrosion Control is an additional insured under Aetna's policy requires that we revisit the same issue addressed in *Tuttle,* but from the opposite perspective. Thus, the narrow question presented today is whether Corrosion Control is a motorist defendant

whose tort liability falls within the scope of the no-fault act and Aetna's policy. In light of the policy's language, the no-fault act, and the principles set forth in *Tuttle,* we are unpersuaded that Corrosion Control is a motorist defendant because its alleged wrongful act and, hence, its alleged liability, did not arise from the use, ownership, or maintenance of the BLH boom truck. Consequently, we hold that Naasko's injury, as to Corrosion Control, was beyond the scope of Aetna's liability policy.[14] Corrosion Control, therefore, had no contractual rights under Aetna's policy, even if Naasko's claim was false, fraudulent, or groundless.[15]

A

We first note that the Court of Appeals conclusion of law that Corrosion Control "used" the BLH boom truck is incorrect. An omnibus clause extends liability coverage to a person or organization legally responsible for the use of the named insured's vehicle. See 12 Couch, Insurance, 2d, § 45:291. Although an agency or contractual relationship is not necessary in order for a third party to become an additional insured, *id.,* § 45:305, p 638, there must be, at the very least, some type of relationship between the named insured and the party alleged to be an additional insured in order to find that the latter is legally responsible for the use of the named insured's motor vehicle.

The Court of Appeals concluded that, within the meaning of Aetna's omnibus clause, Corrosion

---

[14] We note that the parties have not distinguished between the duty to defend and the duty to indemnify, apparently assuming that the outcome of the latter question will determine the former. Thus, in this case, we assume, without deciding, that because Aetna had no duty to indemnify, it had no duty to defend in the suit against Corrosion Control.

[15] Given our holding, it is unnecessary to determine whether the policy's workers' compensation exclusion applies to Corrosion Control.

Control was "using" the BLH boom truck when "[*Corrosion Control*] had B & L Hotshot use the truck to load and transport the pipes from its premises to a location specified by Shell Oil Company pursuant to the contract entered into between Corrosion Control and Shell Oil Company." (Emphasis added.) As Aetna correctly points out, however, the only inference that can be fairly drawn from the allegations in Celina's complaint is that Shell Oil, and not Corrosion Control, was legally responsible for the use of BLH's boom truck when Naasko was injured. In its complaint, Celina specifically pled that BLH and Naasko "were on the Corrosion Control premises pursuant to a contract with Shell Oil to load and deliver pipe which had been sandblasted by Corrosion Control."[16]

In addition, Naasko's complaint alleged that Corrosion Control ordered BLH employees to place the presandblasted pipes near the overhead power line in the first place. Although this allegation standing alone may support a landowner's liability claim sounding in negligence, when added to Celina's admission that BLH was acting pursuant to a contract with Shell Oil Company, there is simply no basis on this record for concluding Corrosion Control was "using" the BLH boom truck or was otherwise legally responsible for BLH's own use of the truck when Naasko was injured. Therefore, we reject the lower courts' holdings that Corrosion Control "used" the BLH boom truck.

More fundamentally, however, we also reject the lower courts' conclusions that, without consideration of the underlying nature of its own alleged wrongful conduct, Corrosion Control could become an insured under the policy solely as a result of the acts or omissions of Naasko and BLH. As we

---

[16] Corrosion Control also admitted this fact in the trial brief it filed in Naasko's suit.

explained in *Tuttle,* the no-fault act did not abolish tort liability and impose third-party no-fault compensation merely because an *injury* happens to arise from the use, maintenance, or operation of a motor vehicle. What is abolished is *tort liability* arising from the use, operation, or maintenance of a motor vehicle. Because liability, at the very least, requires a defendant's wrongful act or failure to act, *Tuttle,* 411 Mich 544, we concluded in *Tuttle* that the no-fault statute left intact tort liability arising from an act other than the use, ownership, or maintenance of a motor vehicle. Although Naasko's injuries arguably arose from the use of the BLH boom truck, the issue here is whether Naasko's complaint alleges Corrosion Control's wrongful conduct, upon which its liability to Naasko is predicated, also arose from the use of the boom truck. We believe it does not.

Nowhere on the face of the complaint does Naasko allege facts indicating that Corrosion Control's wrongful conduct arose from the use, maintenance, or operation of a motor vehicle. To be sure, Naasko does allege that his injuries arose from the use of the BLH boom truck and that Kuhns created an unsafe work environment by negligently instructing BLH employees to place the pipes near the overhead power lines. While these allegations may form a sufficient basis for Naasko to state a prima facie claim for first-party benefits under the policy as against his employer,[17] it is an insufficient basis to support the legal conclusion that Corrosion Control's own negligence also arose from the use of the BLH boom truck and fell within the scope of Aetna's no-fault policy.

Even if we look to the gravamen of the com-

---

[17] Even if Naasko was otherwise entitled to first-party benefits, his workers' compensation award would appear to bar recovery under the policy's workers' compensation exclusion endorsement.

plaint, we can only conclude that Corrosion Control was negligent, if at all, for directing BLH employees to place the pipes near the overhead power lines in the first place. Although the BLH boom truck was involved, Corrosion Control's conduct no more arose from the use of the BLH boom truck than did the defendant's from the beverage truck in *Tuttle.* Corrosion Control was negligent, if at all, for the very reason Naasko alleged in his complaint: By ordering the pipes placed near the overhead power line, Corrosion Control failed to maintain a safe workplace. As we stated in *Tuttle,* in spite of the no-fault act, compensation for injuries nonmotorist defendants cause is still determined by fault:

> The no-fault act is a system of compensating injuries and damages incurred in accidents *caused by* motor vehicles. Compensation is due without regard to fault, and the tort system for adjudicating fault was partially abolished. In the context of the no-fault act, therefore, the abolition of "tort liability arising from the ownership, maintenance, or use . . . of a motor vehicle" carries the implicit sense of tort liability for injuries or damage *caused by* the ownership, maintenance or use of a motor vehicle.
>
> Only persons who own, maintain or use motor vehicles can be subject to tort liability for injuries or damage caused by the ownership, maintenance or use of a motor vehicle. The nonmotorist tortfeasor cannot be subject to tort liability for injuries or damage caused by the ownership, maintenance or use of a motor vehicle. The abolition of tort liability for injuries or damage caused by (arising from) the ownership, maintenance or use of a motor vehicle, therefore, does not abolish the tort liability of the nonmotorist tortfeasor. [411 Mich 545-546. Emphasis in the original.]

Under the plain language of the no-fault act and

our interpretation of the act in *Tuttle,* therefore, the tortfeasor's conduct, upon which liability is predicated, must also arise from the use, maintenance, or operation of a motor vehicle in order for the tortfeasor's liability to be abolished and for the plaintiff to receive no-fault compensation under the tortfeasor's liability policy. Absent this causal link between the plaintiff's injury and the tortfeasor's conduct, the no-fault act does not abrogate the tortfeasor's liability, and the plaintiff's right to compensation, as against the tortfeasor, is determined only with regard to fault under common-law tort principles. It is precisely this causal link that is missing in the present case.

B

Celina also argues that the Court of Appeals holding in *Michigan Mutual Liability Co v Ohio Casualty Ins Co,* 123 Mich App 688; 333 NW2d 327 (1983), supports its claim that Corrosion Control is an additional insured. Although Celina vigorously contends that it "stands in the same shoes as Michigan Mutual" and Corrosion Control is as much an additional insured as Uganski Crane & Truck Service, Michigan Mutual's insured, we are unpersuaded. As the Court of Appeals noted, Uganski's negligence arose from the act of preparing to tow a Michigan Foundry & Supply Company truck, during which Helmer, a Michigan Foundry employee, was injured. Thus, the Court unanimously concluded Uganski's negligent use of its own vehicle, in conjunction with the Michigan Foundry truck, could not "be considered such an independent, intervening, disassociated act that Helmer's injury did not arise out of or flow from the maintenance or use of the Michigan Foundry truck." 123 Mich App 696. In the present case,

however, Corrosion Control is clearly a nonmotorist defendant, and its alleged failure to maintain a safe work environment is far different than "[p]reparing to tow a disabled or stuck vehicle[,] . . . an activity that is identifiable with the maintenance and use of such vehicle and foreseeably necessary." 123 Mich App 695-696. Thus, we reject Celina's reliance on *Michigan Mutual.*

The reasoning and analysis of cases such as *Central Mutual Ins Co v Walter,* 143 Mich App 332; 372 NW2d 542 (1985), lv den 424 Mich 851 (1985), however, does persuade us that Corrosion Control is not an additional insured.[18] An automobile brought into a service station for repair leaked gasoline onto the station floor. The fuel spread, came into contact with the open flame of a hot water heater located in the service bay, and a fire erupted.

Central Mutual Insurance Company (CMI) insured the premises and settled the property damage claim. CMI then sued Detroit Automobile Inter-Insurance Exchange, the automobile's insurer. CMI's legal theory was that, since the property damage arose from the use or maintenance of a

---

[18] See *Longworth v Dep't of State Hwys,* 110 Mich App 771; 315 NW2d 135 (1981) (under *Tuttle,* since the defendant's liability arose from the negligent maintenance of the highway, and not from a motor vehicle, the no-fault act was inapplicable). See also *Lundy v Groty,* 141 Mich App 757; 367 NW2d 448 (1985) (motor vehicle manufacturer and dealership nonmotorist defendants); *Coleman v Franzon,* 141 Mich App 99; 366 NW2d 86 (1985) (the no-fault act did not abolish a motor vehicle repair facility's tort liability for negligent brake repairs); *Hengartner v Chet Swanson Sales, Inc,* 132 Mich App 751; 348 NW2d 15 (1984) (the no-fault act did not abrogate a motor vehicle repair facility's tort liability); *Ohio Casualty Ins Group v Robinson,* 127 Mich App 138, 147; 338 NW2d 898 (1983) (MACKENZIE, J., concurring in part and dissenting in part) (if the defendant's negligence arose from grease on the garage floor, the no-fault act did not abolish the service station's tort liability); *Grof v Michigan,* 126 Mich App 427; 337 NW2d 345 (1983) (the no-fault act is not applicable where the defendant failed to maintain an intersection in reasonable repair).

motor vehicle, the damage fell within the scope of DAIIE's property protection clause issued pursuant to MCL 500.3121(1); MSA 24.13121(1).[19] Although the trial court agreed with CMI and granted its motion for summary disposition, the Court of Appeals reversed. The Court held that the property damage did not arise from the ownership or maintenance of an automobile within the meaning of § 3121(1). The Court reasoned that, although proximate causation is not required, a minimal causal connection of some sort must exist between the injury and the defendant's use, maintenance, ownership, or operation of a motor vehicle. 143 Mich App 336. The Court found support for this proposition from our decision in *Tuttle* by noting that the property damage resulted from a premises hazard unrelated to the use, maintenance, or operation of a motor vehicle. 143 Mich App 337. As in the present case, the mere fact that a motor vehicle was involved in an incident resulting in bodily injury or property damage is simply not sufficient to bring a claim asserted against a nonmotorist defendant within the scope of a no-fault liability policy.

C

Finally, the conduct of the underlying litigation also persuades us that the parties themselves did not regard Naasko's claim to fall within the scope of Aetna's policy. Neither Naasko's complaint nor Corrosion Control's answer raised the issue of no-

---

[19] Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle subject to the provisions of this section and sections 3123, 3125 and 3127. [MCL 500.3121(1); MSA 24.13121(1).]

fault coverage. In addition, Corrosion Control expressly conceded in its trial brief, filed almost two years after Naasko brought suit and nearly one month before trial, that "[t]he duties owed by Mr. Kuhns to the Plaintiff were strictly limited to those owed by an owner of land to a business invitee." It was only when Celina was on the verge of settling Naasko's claim—nearly six months after mediation and less than one month before trial was scheduled to begin—that Celina first raised the no-fault issue by tendering its defense to Aetna.

### CONCLUSION

In light of the plain and unambiguous language of the no-fault act and our holding in *Tuttle, supra,* it is clear that, in order for a claim to fall within the scope of the no-fault act and third-party liability policies issued pursuant to the act, an injured plaintiff must show more than that his injuries arose merely from the use, operation, or maintenance of a motor vehicle. Because the act abrogates tort liability arising from the use, operation, or maintenance of a motor vehicle, the defendant's wrongful conduct, which gives rise to that liability, must also arise from the use, operation, or maintenance of a motor vehicle. Since Corrosion Control was negligent, if at all, under a landowner's liability claim and not from the use, ownership, or maintenance of the BLH boom truck, Corrosion Control is a nonmotorist defendant whose tort liability is beyond the scope of the no-fault act and Aetna's policy.[20]

[20] Justice BRICKLEY's concurring opinion is appealing because it states an extremely complex and intricate question very simply. Although there is nothing wrong with this, his opinion only serves to perpetuate the same flawed analysis that the lower courts employed.

The opinion fails to articulate a principled analysis of Aetna's entire omnibus clause.

We agree with Justice BRICKLEY's contention that our task in this case is to interpret a contract of insurance. In this regard, surely no one can dispute that the principles articulated in the no-fault act and case law interpreting the act shed light on the contracting parties' no-fault insurance agreement. We also agree that the concurring opinion reaches the legally correct result. The opinion, however, rests upon mere conclusory statements without articulating a principled analysis of Aetna's omnibus clause.

As the concurring opinion notes, whether Corrosion Control is an additional insured under Aetna's policy rests upon "its liability *because of* [the] acts or omissions" of either Naasko or BLH. As the concurring opinion correctly states, "because of" is not the mere "but for" causation test commonly found in tort law, but rather, a more narrowly construed concept implying " 'a relationship connecting the culpable acts of persons using the vehicle to [the] liability of another, who then becomes an "insured." ' " *Post,* p 311. "Because of," at the very least, includes, but surely is not limited to, vicarious liability as defined in tort and agency law. See *post,* pp 311-312.

Although the concurring opinion attempts to analyze the "relationship" between Corrosion Control and Naasko, it fails to consider the fact that both Aetna's omnibus clause and the New York trial court's interpretation of similar language in *Long Island Lighting Co v Hartford Accident & Indemnity Co,* 76 Misc 2d 832; 350 NYS2d 967 (1973), expressly refers to the "liability" of the alleged additional insured. In Aetna's omnibus clause, "liability" precedes "because of" and refers to the alleged liability of the alleged additional insured: "(d) any other person or organization but only with respect to his or its *liability* because of acts or omissions of an Insured under (a), (b) or (c) above." [Emphasis added.] The court in *Long Island Lighting* also noted that the "liability" referred to is that of the alleged additional insured: " 'The words imply a relationship connecting the culpable acts of persons using the vehicle to [the] *liability of another,* who then becomes an "insured." ' " *Post,* p 311 (emphasis added).

The ultimate question of the case is whether a sufficient relationship links Naasko's injuries to Corrosion Control's alleged liability within the meaning of Aetna's omnibus clause. As the omnibus clause itself clearly indicates, one factor included in the analysis of this relationship is Corrosion Control's alleged liability. The issue that the concurring opinion fails to resolve in a principled analysis concerns the scope of this relationship: what "liability" does Aetna's omnibus clause refer to? As the court in *Long Island Lighting* correctly noted, the parties to a third-party liability no-fault contract do not " 'demonstrate[ ] [an] intent to deem as an "insured" just any party whose own separate negligence, apart from the vehicle, was a contributor to an accident.' " *Post,* p 312. As the court aptly stated, any other result or interpretation of the no-fault contract would be " 'bizarre.' " *Id.*

The concurring opinion essentially rests upon the New York trial court's observation, albeit a correct one, that it would be "bizarre" to conclude that Corrosion Control is an additional insured under Aet-

Because Naasko's complaint failed to allege a claim against Corrosion Control falling within the scope of Aetna's no-fault policy, Corrosion Control had no rights under Aetna's policy. We hold, therefore, that Aetna likewise had no duty to indemnify Celina, as Corrosion Control's subrogee, for the costs of Corrosion Control's defense or the settlement paid to Naasko.

The Court of Appeals opinion in this case is reversed, and the case is remanded for proceedings consistent with this opinion.

Riley, C.J., and Boyle, J., concurred with Archer, J.

Brickley, J. (*concurring*). The argument made by Celina, which was accepted by the Court of Appeals, is that Corrosion Control is an additional insured under § II(d) of the no-fault policy issued by Aetna, and that coverage for Naasko's injuries otherwise exists under the policy. We agree with the lead opinion's characterization that "our task is to determine whether Corrosion Control is an

na's policy where its alleged liability arose from a premises hazard unrelated to the use of the BLH boom truck. In contrast, we have attempted to provide a principled analysis and rational explanation supporting the proposition that the parties to a no-fault insurance contract, absent a contrary agreement, did not intend to extend third-party liability coverage to individuals or organizations like Corrosion Control, "'whose own separate negligence, apart from the vehicle, was a contributor to an accident.'" See *post*, p 312.

Thus, although it may be true, it is wholly inadequate to rest upon the conclusion that "Corrosion Control, if it is indeed liable at all, is liable because of its own negligence . . . [and] not 'because of' Naasko's acts or omissions . . . ." *Post*, p 312. The undisputed fact is that if Corrosion Control's *own* alleged negligence and resultant liability did arise out of the use of the BLH boom truck, Corrosion Control would fall within Aetna's omnibus clause. It is this precise limitation upon the conduct of third-parties, which the parties to the no-fault contract have agreed, that the concurring opinion fails to analyze. It is for this reason that, within the meaning of Aetna's omnibus clause, the requisite relationship linking Corrosion Control's alleged liability to Naasko's injuries is missing.

insured under Aetna's policy."[1] The lead opinion, we believe, takes the wrong route to answer that question.[2] For this reason, we are compelled to write separately, even though we agree with the lead opinion's ultimate conclusion—that Corrosion Control is not covered under Aetna's policy. In our judgment, it is ill advised to create new law to resolve a contractual dispute when the case can be simply resolved by interpreting the contract itself. In particular, we find that the lead opinion's extension of *Citizens Ins Co of America v Tuttle,* 411 Mich 536; 309 NW2d 174 (1981), is unnecessary and invites confusion.

We prefer to follow the lead of *Long Island Lighting Co v Hartford Accident & Indemnity Co,* 76 Misc 2d 832; 350 NYS2d 967 (1973), a case cited by neither party. *Long Island Lighting Co* features a policy substantially identical to Aetna's, a strikingly similar set of facts, and a more legally responsive approach to the questions presented.

I

The lead opinion correctly observes that *Tuttle* focused on tort liability.[3] In *Tuttle,* we held that the owner of a cow which wandered onto a road and was hit by a truck could not claim the immunity from tort liability granted in the no-fault act because the liability of the cow's owner did not

---

[1] *Ante,* p 294 (ARCHER, J.).

[2] The lead opinion defines the issue before the Court in several different ways. For example, the lead opinion inquires not only whether Corrosion Control is an additional insured under the omnibus clause of Aetna's policy, but also whether Corrosion Control "used" the boom truck (*ante,* pp 297-298 [ARCHER, J.]); whether Naasko's complaint alleges that Corrosion Control's wrongful conduct arose from the operation, maintenance, or use of a motor vehicle (*ante,* p 299 [ARCHER, J.]); and whether Corrosion Control is a motorist defendant whose tort liability falls within the scope of the no-fault act and Aetna's policy (*ante,* p 299 [ARCHER, J.]).

[3] *Ante,* pp 294-296 (ARCHER, J.).

arise from the ownership, maintenance, or use of a motor vehicle.[4] The lead opinion states that Corrosion Control's wrongful conduct did not arise from the use of the boom truck.[5] The conclusion then drawn in the lead opinion is, in our view, somewhat strained. The lead opinion contends that because Corrosion Control's negligence did not arise from the use of the boom truck, coverage under Aetna's no-fault policy is unavailable.[6]

There are, we believe, several problems with this analysis. First, *Tuttle* involved solely a question of statutory interpretation—did the liability of the cow's owner arise from the operation, maintenance, or use of a motor vehicle for purposes of statutory immunity from tort liability? Our goal in that case, as in every case involving the interpretation of a statute,[7] was to discern the intent of the Legislature. *Tuttle, supra,* pp 544-546. By contrast, we are asked in this case to determine whether particular acts and omissions are covered by a particular insurance contract. As we explained in *Auto Club Ins Ass'n v DeLaGarza,* 433 Mich 208, 217; 444 NW2d 803 (1989), the considerations we bring to bear on matters of statutory construction and contract interpretation are not identical. Unless a further link in the lead opinion's argument is provided to support the conclusion that, in the no-fault context, established principles of insurance contract interpretation are not applicable, we cannot accept the conclusion that *Tuttle* controls the outcome here.

In addition, the analysis we conducted in *Tuttle* is simply not necessary in this case. In *Tuttle,* we

---

[4] MCL 500.3135(2); MSA 24.13135(2).

[5] *Ante,* pp 299, 304 (ARCHER, J.).

[6] *Ante,* p 299 (ARCHER, J.).

[7] See *Franks v White Pine Copper,* 422 Mich 636, 658; 375 NW2d 715 (1985).

were required to determine whether the cow own-
er's tort liability arose from the operation, mainte-
nance, or use of a motor vehicle in order to decide
whether his tort liability had been abrogated. In
the instant case, our task of determining whether
the operation of Aetna's omnibus clause renders
Corrosion Control an "additional insured" does not
require us to embark upon the same inquiry.[8] The
lead opinion, however, relies on *Tuttle* to manufac-
ture a rule of law which would restrict the cover-
age provided under § II(d) of Aetna's policy[9] to
motorist defendants whose wrongful acts arise
from the operation, maintenance, or use of a mo-
tor vehicle.[10] Clearly, no such requirement is incor-
porated in the omnibus clause itself. Nor is the
reading of the lead opinion's "motorist defendant"
requirement into the contract justified by some
other contractual provision of Aetna's policy.
Moreover, unlike the situation presented in *Tuttle*,
there appears to be no statutory provision obvi-
ously applicable to the instant case which would
support the engrafting of the motorist-defendant
requirement onto Aetna's omnibus clause. Simply
put, the lead opinion has rewritten Aetna's policy
to make it say something that it does not.[11]

In our judgment, the argument that

> [b]ecause the act abrogates tort liability arising
> from the use, operation, or maintenance of a mo-

[8] See § II.

[9] The policy language is reproduced at *ante,* pp 292-293, ns 7-8
(ARCHER, J.).

[10] *Ante,* p 297 (ARCHER, J.).

[11] The lead opinion continues along in the same vein by relying on
secondary authority for the propositions that an additional insured
must be "legally responsible for the use of an insured vehicle" and
bear "some type of relationship" to the named insured (*ante,* pp 291,
n 2, 297 [ARCHER, J.]). The lead opinion cites neither case law,
statutory language, nor policy language to support this judicial modi-
fication of the omnibus clause of Aetna's policy.

tor vehicle, the defendant's [insured's?] wrongful
conduct, which gives rise to that liability, must
also arise from the use, operation, or maintenance
of a motor vehicle[12]

need not be made and is misleading. If Aetna is
required to defend and indemnify Corrosion Con-
trol, it is not because of any statutory limitation
on tort liability, but rather because Corrosion
Control is covered under Aetna's policy.

## II

Upon inspection of Aetna's policy, we conclude
that the following requirements must be satisfied
in order for Corrosion Control, the indemnitee, to
be covered by the motor vehicle owner's insurer
(Aetna).[13] First, the indemnitee must be an insured
under Aetna's policy. Second, the covered injuries
or damage must be caused by an occurrence.
Third, the injuries or damage must arise out of the
operation, maintenance, or use, including loading
or unloading, of an automobile. Fourth, the auto-
mobile must be an owned or temporary substitute
automobile. In resolving the coverage question, we
need look no further than the first requirement,
which is not satisfied.

Under § II(c)(2) of Aetna's policy, Naasko qualifies
as an insured because he was using the boom
truck during loading and was an employee of the
named insured, B & L Hotshot, Inc. Section II(d)
provides that any other person or organization
which becomes liable because of the acts or omis-
sions of an insured under § II(c) is also an insured.
Thus, Celina contends, Corrosion Control is liable
*because of* the acts of Naasko, who was an insured

---

12 *Ante,* p 304 (ARCHER, J.).
13 See *ante,* pp 292-293, ns 7-8 (ARCHER, J.).

under § II(c); Corrosion Control, argues Celina, is therefore also an insured. In our view, however, the interpretation of the words "because of" suggested by Celina and the Court of Appeals below is too broad.

We would adopt, instead, the analysis of this issue in *Long Island Lighting, supra.* In that case, a truck operator named McGovern was electrocuted when a boom on the truck touched a high-tension wire maintained by defendant Long Island Lighting Company (LILCO). LILCO, like Celina, sought to claim coverage under an automobile insurance policy issued to the owner of the truck. Like Celina, LILCO argued that its liability arose "because of" the acts of McGovern and that it was, therefore, an additional insured under the policy. In rejecting LILCO's claim, the court stated:

> LILCO rests its case on a broad construction of the words in section II(d), "liability because of acts or omissions of an insured under (a), (b) or (c) above." It contends any organization is insured with respect to its liability occasioned *because of* acts or omissions of an insured. Says LILCO, in effect, "McGovern's employee, an insured, drove the truck into the wires, and therefore his act led in sequence to the accident and resulting claim against LILCO." This position is that "but for" McGovern's acts there would have been no loading, no accident, no LILCO liability.
>
> However, the court believes that there is a more circumscribed meaning to "because of" than merely being a sequential link in the chain of events. The words imply a relationship connecting the culpable acts of persons using the vehicle to liability of another, who then becomes an "insured." The phrase appears to include persons or organizations held in by way of vicarious liability or derelictions of McGovern, its employees, or a consensual user of the vehicle.

\* \* \*

There is no demonstrated *intent* to deem as an "insured" just any party whose own separate negligence, apart from the vehicle, was a contributor to an accident.

The end result under LILCO's interpretation would be bizarre. A wholly negligent instrumentality in an accident causing injury to a McGovern employee would then become an "insured" under McGovern's own policy simply because an employee's totally faultless act was one sequential factor out of many events leading to an accident. Every person encountering McGovern's staff would then potentially be an "insured." A negligent contractor leaving a pothole in the road, a property owner poorly lighting an area, a party who improperly marks off a hazard, would all become "insured" under LILCO's attempted construction when the McGovern car, however innocently driven, met disaster upon their encounter. The end result is too odd to accept. Some rule of reason must accompany the semantic exercises. [*Long Island Lighting Co, supra,* pp 836-837. Additional emphasis supplied.]

To this analysis we would add the observation that Corrosion Control, if it is indeed liable at all, is liable because of its own negligence, not because it must answer vicariously for the acts of Naasko. If Naasko were to succeed in recovering a tort judgment from Corrosion Control, it would be incumbent on Naasko to demonstrate that Corrosion Control's negligence was a proximate cause of his damages. Thus, Corrosion Control would not be liable unless it were shown that Corrosion Control's liability arose not "because of" Naasko's acts or omissions, but "because of" its own acts or omissions.

For these reasons, we conclude that Corrosion Control is not an insured under Aetna's policy and

that Celina's claim therefore fails. We concur with the result reached in the lead opinion.

GRIFFIN, J., concurred with BRICKLEY, J.

LEVIN, J. (*concurring*). I concur because the injured employee, Russell Naasko, did not seek to recover against Corrosion Control because of acts or omissions of his employer, B & L Hotshot, Inc., the apparent owner of the insured vehicle, or for acts or omissions of another person while such other person was using the insured automobile.[1] The injured employee sought rather to recover against Corrosion Control for acts or omissions of Corrosion Control not involving use of the vehicle.[2] Corrosion Control was thus not an insured, and defendant Aetna Life & Casualty Company was not subject to liability under the policy.

CAVANAGH, J., concurred with LEVIN, J.

[1] Clause (d) of the no-fault automobile policy issued to Hotshot provided coverage as an insured to "any other person"—such as Corrosion Control—"only with respect to his or its liability because of acts or omissions of an Insured under (a), (b) or (c) above."

The insured under (a) was Hotshot. An insured under (c) is "any other person while using an owned automobile . . . ."

[2] The negligence alleged in the complaint against Corrosion Control was that it negligently instructed a fellow employee of the plaintiff where to place the pipes, it failed to remove the overhead power lines, it failed to provide a safe place to work, and it failed to move the pipes or equipment to a safe location.